**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA *ex rel.*
JOSEPH SEIKEL and TERENCE SEIKEL,

      Plaintiffs,

v.

DAVID B. ALVAREZ; APPLIED
CONSTRUCTION SOLUTIONS, INC.;
ENERGY TRANSPORTATION, LLC;
ENERGY RESOURCE GROUP, LLC;
ET360, LLC; BEAR CONTRACTING, LLC;
BEAR UTILITIES, LLC; JASON P.
HENDERSON; and JOHN DOES NOS. 1-50,
FICTITIOUS NAMES;

      Defendants.

Civil Action No.  1:23-cv-00001
Honorable Thomas S. Kleeh

**MEMORANDUM OF LAW IN SUPPORT OF
HENDERSON DEFENDANTS' MOTION TO DISMISS**

## I.    <u>INTRODUCTION</u>

Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC (collectively, the "Henderson Defendants"), by and through counsel, submit this memorandum of law in support of their motion to dismiss.  The Court should dismiss the Complaint for False Claims Act Violations Under 31 U.S.C. §§ 3729–3733 filed by Joseph Seikel and Terence Seikel (collectively, "the Seikels") for the following reasons.  First, the Court should dismiss the action for lack of jurisdiction because the Seikels are not qualified to bring this *qui tam* action as relators. Second, the Court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 9(b) because the Seikels have failed to allege fraud with the requisite particularity.  Third, the Court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Seikels fail to state a claim under the False Claims Act ("FCA") upon which relief can be granted.

Accordingly, the Court should dismiss the Complaint against the Henderson Defendants with prejudice.

## II.   STATEMENT OF THE CASE AND RELEVANT FACTS

### A.   Paycheck Protection Program.

On March 13, 2020, President Trump declared a state of emergency due to the ongoing COVID-19 pandemic for all States, territories, and the District of Columbia.   Additionally, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 (the "CARES Act"), which allowed the U.S. Small Business Administration ("SBA") to guarantee 100% of 7(a) loans under a new Paycheck Protection Program ("PPP").

#### 1.   Definition of Small Business.

The SBA has established a series of regulations that govern what businesses are eligible for a PPP loan.  An entity generally is eligible for a PPP loan if it, combined with its affiliates, is (i) a small business as defined in Section 3 of the Small Business Act (15 U.S.C. § 632); (ii) has 500 or fewer employees whose principal place of residence is in the United States; or (iii) is a business that operates in certain industries and meets applicable SBA employee-based size standards for that industry.[1]  The SBA then published additional guidance through frequently asked questions.

In the Paycheck Protection Program Loans Frequently Asked Questions as of July 8, 2022 ("July FAQs"), the following information was provided in response to "Question 2":

> Question: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?

---

[1] *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811–17 (Apr. 15, 2020).

Answer: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

Additionally, a business can qualify for a First Draw PPP Loan as a small business concern if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

A business that qualifies as a small business concern under section 3 of the Small Business Act, 15 U.S.C. 632, may truthfully attest to its eligibility for a First Draw PPP Loan on the Borrower Application Form, unless otherwise ineligible.[2]

As the July FAQs state, the SBA's "alternative size standard" is a two-prong test.  First, the entity, and all of its affiliated companies, cannot have a maximum tangible net worth in excess of $15 million.  Second, the entity, and all of its affiliated companies, cannot have an average net income after federal income taxes for two full fiscal years that exceeds $5 million.  This test does not require the entity, and its affiliated companies, to have 500 or fewer employees.

### 2.  Affiliation Rules.

Under the affiliation rules for SBA loans ("SBA Affiliation Rules"), "concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both."  13 C.F.R. § 121.301 (2022).  Such control may be either affirmative (i.e., right to take action) or negative (i.e., right to prevent action).  Under the SBA Affiliation Rules, there are four tests based on control that PPP applicants are required to consider when determining whether the applicant has any affiliates.  Those tests are:

1.  Affiliation based on equity ownership;

---

[2] See Office of Capital Access, *FAQ for PPP Borrowers and Lenders*, SBA.GOV (July 8, 2022), https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

2.      Affiliation arising under stock options, convertible securities, and agreements to merge;

3.      Affiliation based on management; and

4.      Affiliation based on identity of interest.

*Id.*[3]

The CARES Act initially suggested that affiliation should be tested under 13 CFR § 121.103(a). Under those regulations, the SBA considered factors such as "ownership, management, previous relationship with or ties to another concern, and contractual relationships, in determining whether affiliation exists."[4] Additionally, the SBA could consider the "totality of the circumstances" when determining whether affiliation exists.[5] However, the SBA's recent guidance on affiliation points applicants toward the affiliation standards contained in the 2019 version of section 121.301(f), as discussed above.[6] In doing so, the SBA expressly limited the scope of those rules by focusing on only four tests for affiliation. *See* 13 CFR § 121.301(f).[7] The SBA thus allowed applicants to disregard the other affiliation tests, most notably the test based on the "totality of the circumstances." The SBA's "Small Business Compliance Guide: A Guide to the SBA's Size Program and Affiliation Rules" clearly states that affiliation based on the totality of circumstances does not apply to the Business Loan, Disaster Loan, and Surety Bond Programs.[8]

---

[3] *See also* Office of Capital Access, *Affiliation Rules for Paycheck Protection Program*, SBA.GOV (Apr. 3, 2020), https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program.

[4] 13 C.F.R. § 121.103(a).

[5] 13 C.F.R. § 121.103(a)(5).

[6] Section 1102(e) of the CARES Act permanently rescinded the SBA's February 2020 amendment to section 121.301.

[7] *See also* Office of Capital Access, *Affiliation Rules for Paycheck Protection Program*, SBA.GOV (Apr. 3, 2020), https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program.

[8] *See* Office of Government Contracting and Business Development, *Affiliation Guide for Size Standards¸* SBA.GOV (July 13, 2020), https://www.sba.gov/document/support-affiliation-guide-size-standards.

B.      **Procedural Background.**

Defendant Jason P. Henderson ("Henderson") is a resident of Stonewood, Harrison County, West Virginia.  Henderson is the owner of Defendant Energy Resource Group, LLC ("ERG")[9] and Defendant ET360, LLC ("ET360")[10] (collectively, the "Henderson Companies"). Generally speaking, the Henderson Companies service or, in the case of ET360, formerly serviced the oil and gas industry.   ERG performs geomembrane installations for environmental containments, waste disposal sites, and water storage solutions for industrial sites, the oil and gas industry, and municipal waste disposal sites (landfills).    ET360 performed Industrial/Environmental Cleaning services and Water Transportation.   Like many small businesses, the Henderson Defendants experienced economic hardship as a result of the coronavirus pandemic.   In an attempt to mitigate that economic hardship, the Henderson Defendants applied for PPP loans in the early days of PPP and utilized an accounting firm and its qualified certified public accountants to prepare the loan applications.   These qualified professionals were familiar with the Henderson Defendants from previous business dealings and assisted the Henderson Defendants with ensuring each entity that applied for PPP was qualified for the PPP loans.  The Henderson Defendants' PPP applications were approved—ET360 received approximately $2.3 million in PPP funding, and ERG received approximately $606,000 in PPP funding.  ERG submitted an application for the second round of PPP funding in February 2021 but received no response from the SBA.  Further, the Henderson Defendants have yet to have their PPP loans forgiven.

---

[9] Information regarding ERG is publicly available on the West Virginia Secretary of State website: https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=58nN/550O27FJ7pbwWK/cQ==&Search=tFooM7 gt0Q7ZFD3whb%2fsp%2fdPe5IOoqhiaSpdicS1Xtg%3d&Page=0.

[10] Information regarding ET360 is publicly available on the West Virginia Secretary of State website: https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=T6InEQ+a1MOwRuDJV6xs0g==&Search=%2f6Jc gAC5d756touNixfy8w%3d%3d&Page=0.

The Seikels allege to be "residents of Michigan" and "insiders who have direct knowledge of the conduct alleged in [the] Complaint and conducted an independent investigation to uncover false claims submitted to the United States."  ECF No. 1 ¶¶ 22–23.  What the Seikels fail to disclose, however, is that they in fact are not "insiders" with "direct knowledge" but rather are owners and members of Octane Environmental, LLC ("Octane"), an Ohio corporation with its principal office in Bridgeport, West Virginia,[11] which is a business competitor to the Henderson Companies and the other Defendants named in this matter which are not affiliated with the Henderson Companies.  As plainly stated on its publicly available website, the mission of Octane is "to be a leading, high quality supplier of water management, containment, and related services for the oil and gas industry."[12]

On October 22, 2020, the Seikels, on behalf of the United States of America, initiated the instant *qui tam* action in the United States District Court for the Eastern District of Pennsylvania by filing, under seal, their Complaint for False Claims Act Violations Under 31 U.S.C. §§ 3729–3733 against the Henderson Defendants; Defendants David B. Alvarez, Applied Construction Solutions, Inc., and Energy Transportation, LLC (collectively, the "Alvarez Defendants"); Bear Contracting, LLC, and Bear Utilities, LLC (collectively, the "Urso Defendants"); and John Does Nos. 1–50, Fictitious Names.  ECF No. 1.  The complaint states four counts against the Defendants: (1) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(A); (2) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(B); (3) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(C); and (4) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(G).  *Id.* at 38–41.

---

[11] Information regarding Octane is publicly available on the West Virginia Secretary of State website: https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=5FhHg7atDnCHTDl9nmvkPQ==&Search=ldEjbj8TL5R0xDbJ8CdE3wbHNDQqdw%2fPDwJjkcutHoE%3d&Page=0.
[12] The Octane website is publicly available at: https://octaneenvironmental.com/.

Shortly after the complaint was filed, the Department of Justice began investigating the Seikels' claims. The Department of Justice first reached out to the Henderson Defendants on March 25, 2021. The Henderson Defendants readily cooperated with the Department of Justice, producing several explanatory memos and thousands of pages of supporting documentation. On July 26, 2022, the United States District Court for the Eastern District for Pennsylvania ordered the United States to decide if it was going to intervene and ordered the complaint to be unsealed by August 25, 2022. On August 24, 2022, the Department of Justice filed a notice stating that its "investigation has not been completed and, it is therefore unable to decide, as of the Court's deadline, whether to proceed with the action. Accordingly, . . . it is not intervening at this time." ECF No. 23. The complaint was then unsealed on August 25, 2022.

The Court also issued Summons to the Defendants on August 25, 2022, which were to be served by the Seikels. ECF No. 25. By letter dated November 1, 2022, a Deputy Clerk for the Eastern District of Pennsylvania informed counsel for the Seikels that if service was not made by November 23, 2022, the Court would dismiss the complaint without prejudice for lack of prosecution. ECF No. 26. On November 23, 2022, the Henderson Defendants and Alvarez Defendants each filed a Waiver of the Service of Summons and were served with the complaint. ECF Nos. 32, 33.[13]

On November 9, 2022, the Alvarez Defendants filed their Motion to Transfer Venue Under 28 U.S.C. § 1404(a), requesting that the court transfer the litigation to the Northern District of West Virginia. ECF No. 28. On November 16, 2022, the Henderson Defendants filed their Notice

---

[13] To date, the Seikels have not served the Urso Defendants. Upon information and belief, the Henderson Defendants understand that the Urso Defendants were investigated by the Department of Justice, which discovered no malfeasance by those entities. Afterwards, the SBA forgave the Urso Defendants' PPP loans. *See Tracking PPP: Search Every Company Approved for Federal Loans*, PROPUBLICA.ORG (Jan. 11, 2023), https://projects.propublica.org/coronavirus/bailouts/.

of Joinder to Alvarez Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a).  ECF No. 30.  By order dated November 22, 2022, the Eastern District of Pennsylvania court directed the Seikels to submit a response to the Alvarez Defendants' motion by December 14, 2022.  ECF No. 31.  The order also established that any responsive pleading to the complaint and summons was to be filed within twenty-one days following the disposition of the motion to transfer venue.  *Id.*  The Seikels filed their response in opposition to the Alvarez Defendants' motion on December 14, 2022.  ECF No. 34.  A hearing on the Alvarez Defendants' motion was held on January 4, 2023, during which the Eastern District of Pennsylvania court ruled from the bench that the matter should be transferred because it lacked ties to the jurisdiction.  *See* ECF No. 40.  By order dated January 4, 2023, the Eastern District of Pennsylvania court granted the Alvarez Defendants' motion to transfer venue and directed that the case be transferred to the Northern District of West Virginia. ECF No. 41.  By joint stipulation of the parties, and by order entered on January 26, 2023, the time for the Henderson Defendants and Alvarez Defendants to file responsive pleadings was extended through February 28, 2023.  ECF No. 56.

## III.   **LEGAL STANDARD**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  In deciding a motion to dismiss, a court may consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss so long as they are integral to the complaint and authentic, and facts subject to judicial notice.  *Heslep v. Ams. for Afr. Adoption, Inc.*, 890 F. Supp. 2d 671, 681 (N.D. W. Va. 2012) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

For a complaint to survive a motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).  While a complaint does not need detailed factual allegations, a plaintiff's obligation requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Twombly*, 550 U.S. at 555.  Further, well-pleaded facts do not include "legal conclusions drawn from the facts," "unwarranted inferences," or "unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  As the Fourth Circuit has summarized:

> Ultimately, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.  Facial plausibility is established once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible.

*Id.* at 255–56 (internal quotations and citations omitted).

## IV.   ARGUMENT

The Court should dismiss the complaint against the Henderson Defendants for three reasons.  First, the Court lacks jurisdiction because Joseph Seikel and Terence Seikel are not qualified to be relators under the FCA.  Second, the Seikels have failed to allege fraud with the particularity required under Rule 9(b).  Third, pursuant to Rule 12(b)(6), the Seikels fail to state a claim under the FCA upon which relief can be granted.

### A.   The Court Lacks Jurisdiction Because the Seikels Are Not Qualified to Be Relators Under the FCA.

The Court should dismiss the complaint for lack of subject matter jurisdiction because the Seikels are not qualified to bring this *qui tam* action as relators under the FCA.  First, the public disclosure bar requires dismissal because the allegations in the complaint have been publicly

disclosed.  Furthermore, the Seikels are not original sources or insiders such that they can avoid dismissal under the public disclosure bar.

The FCA authorizes a private person to bring a claim for violation of Section 3729 on behalf of that person and the United States.  *See* 31 U.S.C. § 3730(b).  The FCA also, however, expressly bars certain actions.  The public disclosure bar provides that courts "shall dismiss an action or claim under [§ 3730] . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . unless . . . the person bringing the action is an original source of the information."   31 U.S.C. § 3730(e)(4).  Stated otherwise, when the allegations in a purported relator's complaint were publicly disclosed before the suit was filed, the public disclosure bar will be triggered.  *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 642 (4th Cir. 2016).  The public disclosure bar will also be triggered where a purported relator "(1) know[s] of no useful new information about the scheme they allege, and (2) learned of the relevant facts through knowledge their attorney acquired when previously litigating the same fraud claim."  *Id.* at 643.  "The public disclosure bar 'encompasses actions even partly based upon prior public disclosures.'"  *United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 254 (4th Cir. 2012).

If the public disclosure bar is invoked, the court will apply a three-pronged analysis to determine "(1) if there was a public disclosure, (2) if the relator's allegations were 'based upon' the public disclosure, and, if so, (3) whether the relator is nonetheless 'entitled to original source status' as '"an individual who has direct and independent knowledge of the information on which the allegations [] are based[.]"'"  *United States ex rel. Black v. Health & Hosp. Corp. of Marion Cnty.*, 494 F. App'x 285, 293 (4th Cir. 2012) (alterations in original) (citations omitted).  "[T]he Supreme Court has recognized that the first prong of the public disclosure bar is satisfied if the

disclosure 'put[s] the Federal Government on notice of a potential fraud.'" *Id.* at 294 (citation omitted). Further, "[o]nce a defendant files a motion to dismiss based on the public-disclosure bar, the relator bears the burden of proving by a preponderance of the evidence that the bar does not apply." *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2012) (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009)).

Here, the public disclosure bar precludes the Seikels' claims. Allegations of PPP fraud have been in the public discourse since shortly after PPP went into effect.[14] The Seikels' allegations did not put the Federal Government on notice of a potential fraud; their allegations are not unique from those which were made, and which were publicly disclosed, long prior to their complaint being filed under seal on October 22, 2020. Further, the specific business organization, management, and operations of the Henderson Defendants, Alvarez Defendants, and Urso Defendants are also publicly disclosed information, as apparent from the face of the complaint's allegations, as well as the publicly available information through the West Virginia Secretary of State. Finally, information about all of the Henderson Defendants', Alvarez Defendants', and Urso Defendants' PPP applications is also publicly available.[15] As such, the public disclosure bar applies to the Seikels' claims.

Moreover, the Seikels are unable to overcome the public disclosure bar because they are not "an original source of information." The FCA defines an "original source" as follows:

> [A]n individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations

---

[14] *See, e.g.*, Ben Popkin, *Congressional Investigation Finds Over $1 Billion in Coronavirus Aid Fraud*, NBCNEWS (Sept. 1, 2020), https://www.nbcnews.com/business/economy/congressional-investigation-finds-over-1-billion-ppp-fraud-n1239001; Dan Mangan, *Coronavirus Fraud: Two New England Men Are First to Be Charged with Scamming Small Business Loan Program*, CNBC (May 5, 2020), https://www.cnbc.com/2020/05/05/coronavirus-men-charged-with-fraud-over-cares-act-ppp-small-business-aid.html.
[15] *Tracking PPP: Search Every Company Approved for Federal Loans*, PROPUBLICA.ORG (Jan. 11, 2023), https://projects.propublica.org/coronavirus/bailouts/.

or transactions in a claim are based or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31. U.S.C. § 3730(e)(4)(B).  "To establish that his knowledge meets this standard, a relator must 'allege specific facts—as opposed to mere conclusions—showing exactly how and when" he obtained it.  *Ahumada*, 756 F.3d at 276 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999).

Rather than being original sources or insiders, the Seikels are actually business competitors of the Henderson Defendants, Alvarez Defendants, and Urso Defendants.[16]  As discussed above, Joseph Seikel and Terence Seikel are members of Octane, a West Virginia limited liability company with its principal address in Bridgeport, West Virginia.  *See supra* note 11.  According to Octane's publicly available website, Octane provides "scalable containment, water storage, and other related services to oilfield companies harvesting the Appalachian basin."  Further, that the Seikels are disgruntled competitors, rather than insiders, is apparent from the face of the complaint.[17]  For example, in paragraphs 100 and 101, they attempt to imply that the Henderson Defendant entities and Alvarez Defendant entities working together was problematic.  *See* ECF

---

[16] In separate litigation before this Court, on March 20, 2020, the Court denied a motion to compel by Octane and the Seikels, quashing their subpoena duces tecum for the records of ERG (a non-party), because the records requests were overbroad and sought confidential and "valuable information on a direct competitor" for which they failed to show a substantial need.  *See Richards v. Octane Environmental, LLC*, No. 1:18-cv-00158 (N.D. W. Va.), ECF No. 200.  This Order noted that the Seikels and Octane "do not dispute that they are competitors with ERG."  *Id.* at 4.

[17] The Seikels' credibility in representing themselves as insiders is further undermined by their own acts in other litigation.  In a Michigan lawsuit involving a dispute regarding a stock purchase agreement, Terence Seikel, who was the defendants' chief financial officer and who was involved in drafting the stock purchase agreement, testified at trial.  In reaching its conclusion that there was sufficient evidence to support the jury's verdict in favor of the plaintiffs and against the defendants, the Court of Appeals of Michigan recognized that Terence Seikel's testimony was inconsistent and that his "credibility was seriously diminished when plaintiff demonstrated, and Seikel admitted, that he lied to the government on an SEC form and in the confidential memorandum that he presented to the bank."  *Buzzitta v. Larizza Indus., Inc.*, No. 214039, 2021 WL 624969, at *2 (Mich. Ct. App. May 25, 2001).

No. 1 ¶¶ 100–01.  However, there is nothing improper with a business regularly subcontracting with a business owner that it trusts; rather, this is a common business arrangement.

The Seikels are not an "original source" because they do not have "direct and independent knowledge of the information on which the allegations are based."  31 USC § 3730(e)(4)(B).  The Supreme Court has interpreted the "information" referenced in subparagraph (e)(4)(B) to mean the relator's allegations, not the publicly disclosed allegations.  *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 472–73 (2007).  Even if the government intervenes, which it has not done in this case, a relator does not magically obtain jurisdiction if they did not previously have it independently.  *Id.* at 477. The errors on the face of the complaint demonstrate that the Seikels are not original sources, or insiders, and thus are not qualified to bring this action.  Specifically, the errors on the face of the complaint regarding the qualifications for a "small business" and the affiliation standard demonstrate that the Seikels are not insiders.

The Seikels allege that "[w]ith limited exceptions not applicable here, only small businesses with 500 or fewer employees are eligible borrowers in the PPP."  ECF No. 1 ¶ 4.  In their discussion of the standards for determining the size of a business, the Seikels also refer to the size standards under the North American Industry Classification System ("NAICS") codes.  *See, e.g.*, *id.* ¶ 52.  The Seikels, however, fail to mention or consider the Alternative Size Standard.  As discussed more fully below, the Alternative Size Standard provides an avenue for a small business to qualify for PPP funding regardless of its number of employees.  Notably, when the Henderson Defendants applied for PPP relief, PPP applicants were not required to select a test under which they qualified for PPP relief.  The Seikels' failure to account for the Alternative Size Standard demonstrates that they were not aware of the Alternative Size Standard, failed to adequately investigate the standards applicable to their claims, and are not insiders.

13

The Seikels' erroneous allegations regarding the affiliation standard also demonstrate that they are not knowledgeable insiders.  The Seikels allege that "[t]he SBA uses a totality of the circumstances test and may find affiliation even when no single factor is sufficient."  *Id.* ¶ 60.  They proceed to allege a theory of affiliation apparently based on this "totality of the circumstances" test.  *Id.* ¶¶ 61–65.  Their application of a totality of the circumstances test, however, is facially improper.  Rather, as discussed above, there are only four tests to determine whether entities are affiliated for purposes of PPP: (1) affiliation based on ownership; (2) affiliation arising under stock options, convertible securities, and agreements to merge; (3) affiliation based on management; and (4) affiliation based on identity of interest.

Finally, the complaint is full of factual allegations that are irrelevant, even assuming that they are true, to a determination of affiliation under these four tests, and thus cannot be viewed as supporting the plausibility of the Seikels' claims.  Such irrelevant allegations include, but are not limited to, the following: (1) potentially shuttering a business before receiving PPP funds, ECF No. 1 ¶ 131–35; (2) how the entities were originally formed, if formed prior to 2020, *id.* ¶ 75–97; (3) the mailing addresses for the entities, *id.* ¶ 71, 81, 87; (4) cross-marketing strategies of the entities, *id.* ¶ 112–19; (5) inviting employees of other companies to holiday parties, *id.* ¶ 129; (6) sharing technology services, *id.* ¶ 121; and (7) the selling of ERG after receipt of a PPP loan, *id.* ¶ 135.  The Seikels' failure to recognize that allegations such as these are irrelevant to the affiliation determination (or to their broader FCA claims) evidences that they are not insiders or original sources qualified to bring this action.  Accordingly, the Court should dismiss the complaint for lack of jurisdiction.

### B.     The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

The Court should also dismiss the complaint for failure to state a claim upon which relief can be granted.  First, pursuant to Federal Rule of Civil Procedure 9(b), the Seikels fail to allege

fraud with sufficient particularity.  Second, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Seikels fail to state a claim under the FCA upon which relief can be granted.

### 1.      **The Seikels Fail to Plead Fraud with Particularity.**

The Court should dismiss the complaint because the Seikels fail to plead fraud with particularity.  Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  In the context of fraud alleged as part of FCA claims, the Fourth Circuit has recognized that a plaintiff may either (1) "allege with particularity that specific false claims actually were presented to the government for payment," which requires the relator to "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"; or (2) allege a pattern of conduct that would "*necessarily* have led to submission of false claims" to the government.  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 196 (4th Cir. 2022).  Ultimately, "[t]o satisfy Rule 9(b), a plaintiff asserting a claim under the Act 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained.'"  *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456–57 (4th Cir. 2013) (citation omitted).

Here, the Seikels have failed to allege their claims of fraud with sufficient particularity.  For example, although they allege that "all of the Affiliated Defendants are controlled and/or managed by Defendant David B. Alvarez" and that "Alvarez also uses the Affiliated Defendants as interchangeable pieces in his business dealings," *see* ECF No. 1 ¶¶ 7–8, the Seikels fail to provide sufficient details to support these broad conclusory allegations and to explain how those details constitute fraud under the FCA.  Nevertheless, the Seikels then purport to allege that the

Defendants, including the Henderson Defendants, are affiliated for purposes of SBA laws and regulations. *See* ECF No. 1 ¶¶ 98–130. As such, the Seikels' allegations in this regard are devoid of the required specific details regarding the time, place, and contents of false representations, as well as the specific people making those false representations. For example, the Seikels allege that the Defendants would structure agreements with a customer so that all services could be performed by the Defendants, *see* ECF No. 1 ¶ 100, but the Seikels provide no specific instances of customers with which this occurred. Even if such was relevant to the affiliation determination, this type of general pleading without reference to specific details and occurrences pervades the complaint. Furthermore, these types of allegations describing the Defendants' purported business practices and relationships fail to include allegations of fraudulent activity under the FCA.

Additionally in Numbered Paragraphs 156–159, the Seikels allege summarily that the Defendants knowingly defrauded the government by presenting false statements regarding the size of their businesses, but the Seikels do not specifically allege details and contents of the Henderson Defendants', Alvarez Defendants', or Urso Defendants' PPP application submissions, including when those submissions were made. The enumerated Counts I–IV largely incorporate and rely on the allegations previously stated in the complaint and do not contain any further or more specific allegations necessary to maintain such claims. The Seikels' allegations of fraud thus lack the required specificity under Rule 9(b) and should be dismissed.

### 2. The Court Should Dismiss the Complaint Because the Seikels Fail to Plead a Claim Under the FCA Upon Which Relief Can Be Granted.

The Court should dismiss the complaint pursuant to Rule 12(b)(6) because the complaint fails to state a claim upon which relief can be granted. In general, a relator must adequately allege four elements to state a claim under the FCA: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that

caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *Boyko*, 39 F.4th at 188 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999)).   The Seikels expressly allege claims under 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), 3729(a)(1)(C), and 3729(a)(1)(G), which require that the particular false statement or fraudulent course of conduct involved be carried out "knowingly."   "For the first element to be met, 'the statement or conduct alleged must represent an objective falsehood.'"   *United States of Am. ex rel. Vitale v. MiMedx Grp., Inc.*, 381 F.Supp.3d 647, 652 (D.S.C. 2019) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370. 376–77 (4th Cir. 2008)).

Here, the Seikels have failed to sufficiently state claims under the FCA upon which relief can be granted.   First, they have failed to sufficiently plead that the Henderson Defendants made a false claim because the Seikels fail to sufficiently plead that the Henderson Defendants were affiliated with other Defendants and thus not eligible for PPP funding.   In the alternative, the Seikels fail to plead that the Henderson Defendants, even if assumed to be affiliated with the other Defendants, did not satisfy the Alternative Size Standard.   Second, the Seikels fail to sufficiently plead that the purportedly false claims were made with the requisite scienter.   Third, they fail to sufficiently plead that the purportedly false claims were material to the issuance of PPP funding. Accordingly, the Court should dismiss the complaint pursuant to Rule 12(b)(6).

> **a.      The Seikels Fail to Sufficiently Plead That Claims Made by the Henderson Defendants Were False Because the Henderson Defendants Are Separate Entities That Were Qualified and Entitled to Apply for PPP Funding.**

The complaint is premised on the Seikels' insufficiently pled, and also inaccurate, theory that the Defendant entities are "affiliated" and, when considered in the aggregate, were ineligible for PPP funding because, in the aggregate, they exceeded the 500-employee limitation.   However, by focusing on the inapplicable "totality of the circumstances" test, the Seikels fail to sufficiently

allege that the Defendants satisfied any of the applicable tests for affiliation.  As the Seikels fail to sufficiently allege affiliation, the Defendants did not submit any false claims and did not violate the FCA.  The Court should thus dismiss the complaint.

An entity is generally eligible for PPP funding if it is (1) a small business defined in Section 3 of the Small Business Act (15 U.S.C. 632), (ii) has 500 or fewer employees whose principal place of residence is in the United States, or (iii) is a business that operates in certain industries and meets applicable SBA employee-based size standards for that industry.  *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811–17 (Apr. 15, 2020).  In determining the size of a business for purposes of PPP funding, the "SBA counts the receipts, employees, or other measure or size of the concern whose size is at issue and all of its domestic and foreign affiliates."  13 C.F.R. § 121.103(a)(6).  "[C]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both."  13 C.F.R. § 121.301(f).  There are four tests for determining whether a PPP applicant has affiliates: (1) affiliation based on ownership; (2) affiliation arising under stock options, convertible securities, and agreements to merge; (3) affiliation based on management; and (4) affiliation based on identity of interest.  *Id.* § 121.301(f)(1)–(4).  However, even if read favorably to the Seikels, the complaint potentially attempts to allege affiliation only under the first and third tests.[18]

Even with respect to those tests, the Seikels have failed to specifically allege that the Henderson Defendants are affiliated with any of the other Defendants under the "affiliation based

---

[18] The second enumerated test (affiliation arising under stock options, convertible securities, and agreements to merge) is inapplicable because there are no stock options, convertible securities, or agreements to merge applicable to ERG or ET360.  The fourth enumerated test (affiliation based on identity of interest) is also inapplicable on its face because Henderson and Alvarez do not satisfy the definition of "close relatives" pursuant to 13 C.F.R. § 120.10.  The Realtors have not alleged that the Henderson Defendants are affiliated with any other Defendants under either of these tests.

on ownership" test or the "affiliation based on management" test.  As such, the Seikels have failed to plausibly allege a claim upon which relief can be granted.  However, even assuming, *arguendo*, that the Seikels pleaded affiliation under either of these theories or that the allegations can be read to plead affiliation under these theories, such allegations fail to sufficiently state the affiliation of the Henderson Defendants with the other Defendants.

Under the test for "affiliation based on ownership," affiliation arises when "an individual, concern, or entity that . . . owns or has the power to control more than 50 percent of the concern's voting equity." *Id.* § 121.301(f)(1).  The Seikels allege that Alvarez has an ownership interest in ERG and ET360. ECF No. 1 ¶¶ 31–34.[19]  Notably, the Seikels do not specifically allege that Alvarez owns more than 50 percent of the voting equity in either entity.  Accordingly, the Seikels have failed to sufficiently allege that the test for affiliation based on ownership has been satisfied.

Next, under the test for "affiliation based on management," "[a]ffiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns." 13 C.F.R. § 121.301(f)(3).  Further, "[a]ffiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns." *Id.*  Finally, "[a]ffiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *Id.*

As noted on the publicly available West Virginia Secretary of State website, ET360 is a member-managed limited liability company, and Jason Henderson is the sole member.[20]  As such,

---

[19] The Seikels have not alleged that Henderson has an ownership interest in any of the other Defendant entities, so further analysis under that test is not necessary with regard to Henderson's control of such entities.

[20] *See supra* footnote 10.

pursuant to West Virginia Code Section 31B-4-404, "any matter relating to the business of the company may be decided by a majority of the members." Henderson, as the sole member, controls the management of ET360. As noted on the publicly available West Virginia Secretary of State website, ERG also is a manager-managed limited liability company.[21] Pursuant to West Virginia Code Section 31B-4-404, in a manager-managed limited liability company, "any matter relating to the business of the company may be exclusively decided by the manager or, if there is more than one manager, by a majority of the managers." Jason Henderson, John Henderson, and Rick Richards are designated as managers of ERG and thus control the management of ERG.[22] Accordingly, neither Alvarez nor any other Defendant had the type of management control sufficient to support a finding of affiliation. The Seikels have not sufficiently pleaded otherwise.

Because the Seikels fail to sufficiently allege affiliation, the Henderson Defendants must be considered individually, and the Henderson Defendants were eligible to apply for and receive PPP funding on an individual basis, even assuming the employee numbers alleged in the complaint to be true. Because the Henderson Defendants were independently eligible to apply for and receive PPP funding, the Henderson Defendants did not make any false statement that could constitute a basis for the Seikels' FCA claims. Accordingly, the Seikels fail to state a plausible claim upon which relief can be granted, and the complaint should be dismissed.

        **b.**    **In the Alternative, the Seikels Fail to Sufficiently Plead That Claims Made by the Henderson Defendants Were False Because the Defendants Were Eligible and Entitled to Apply for and Receive PPP Funding under the Alternative Size Standard.**

In the alternative, even if the Defendants were considered in the aggregate, the Court should nonetheless dismiss the complaint because the Defendants, in the aggregate, would satisfy the

---

[21] *See supra* footnote 9.
[22] *Id.*

Alternative Size Standard for PPP eligibility, and the Seikels have not sufficiently pleaded otherwise.  As discussed above, the SBA has expressly stated that the Alternative Size Standard is a viable basis for PPP application.  As described above, the "alternative size standard" is a two-prong test.  First, the entity's, and all its affiliated companies', maximum tangible net worth cannot be more than $15 million.  Second, the entity, and all its affiliated companies, cannot have an average net income after federal income taxes for two full fiscal years that exceeds $5 million.  Importantly, the Alternative Size Standard does not require the entity, and its affiliated companies, to have 500 or fewer employees.

The complaint wholly fails to mention the Alternative Size Standard, and it does not allege that the Henderson Defendants have failed to meet that standard.  Therefore, even if the Court finds that the Seikels have sufficiently pleaded affiliation, and that the Defendants should be aggregated for determination of PPP eligibility, which the Henderson Defendants contend is incorrect, the Seikels have failed to sufficiently plead that the Henderson Defendants did not satisfy the Alternative Size Standard.  As such, their application cannot have included any false statement, and the Seikels' FCA claims cannot stand.  The Court should thus dismiss the complaint.

### c.   The Seikels Fail to Sufficiently Plead That the Purportedly False Claims Made by the Henderson Defendants Were Made with the Requisite Scienter.

Even if the Henderson Defendants made false statements in their PPP applications, which the Henderson Defendants deny, the complaint should nonetheless be dismissed because the Seikels fail to sufficiently allege that such statements were made with the requisite scienter.  For purposes of claims under the FCA, "knowing" means "that a person, with respect to information— (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1)(A).  The Fourth Circuit has held that where a defendant's reading of a relevant

statute "was at the very least objectively reasonable and because it was not warned away from that reading by authoritative guidance, it did not act 'knowingly' under the False Claims Act." *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 343–44 (4th Cir. 2022); *see also United States ex rel. Swafford v. Borgess Med.*, 24 F. App'x 491, 2001 WL 1609913, at *1 (6th Cir. 2001) (per curiam) ("Disputes as to the interpretation of regulations do not implicate False Claims Act liability."); *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931 (10th Cir. 2008) (holding that even if the relator's evidence "somehow did raise a weak inference that a particular defendant" intended to misrepresent its eligibility, "this would not be enough to reach a jury" because the ambiguity of "the applicable statutory and regulatory scheme[] preclude a reasonable jury from finding scienter"); *United States ex rel. Hixson v. Health Mgmt. Sys.*, 613 F.3d 1186, 1191 (8th Cir. 2010) (requiring relators to "show that there is *no* reasonable interpretation" of the law supporting the defendant's position, regardless of what the defendants may have actually believed about the law).

Here, the Seikels have not sufficiently alleged that the Henderson Defendants knowingly made a false claim through the submission of their PPP applications.  Regardless of whether the Henderson Defendants should be considered affiliated with any other Defendants, the Henderson Defendants' understanding and application of the relevant guidelines regarding the size of the businesses and the PPP application requirements is at the very least objectively reasonable.  The Seikels have failed to allege any "authoritative guidance" that warned away from the Henderson Defendants' reading of the relevant guidelines.  Further, again, the Seikels' complete failure to analyze (or even mention) the Alternative Size Standard is a fatal flaw in their pleading.  Because the Seikels wholly fail to acknowledge the Alternative Size Standard as a basis for qualifying for PPP funding, the Seikels have also failed to plead that there is no "authoritative guidance" that the

Henderson Defendants would not have qualified for PPP under that standard.  Accordingly, the Seikels have failed to sufficiently plead that the Henderson Defendants acted with the requisite scienter, and the complaint should thus be dismissed.

> **d.   The Seikels Fail to Sufficiently Plead That Purportedly False Claims Made by the Henderson Defendants Were Material.**

Further, even if Henderson Defendants made false statements in their PPP applications, which the Henderson Defendants deny, the complaint should nonetheless be dismissed because the Seikels fail to sufficiently allege that the falsity of such statements was material.  The Fourth Circuit has held that a relator must allege "both materiality *and* a 'false statement or fraudulent course of conduct' as distinct elements of an FCA claim."  *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir. 2014) (citation omitted) (emphasis in original).

The Supreme Court of the United States has held that the misrepresentation "must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).  A misrepresentation should not be deemed "material" solely because the government designates compliance with a certain statutory, regulatory, or contractual requirement as a condition of funding.  *Id.* at 178.  The Supreme Court of the United States has likewise emphasized that "the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations."  *Id.* at 196.  In determining whether a misrepresentation is material, courts consider: (a) whether the government expressly designated the provision as a condition of payment; (b) whether there is evidence the defendant knew that the government consistently refused to pay claims in cases based on noncompliance with the particular statutory, regulatory, or contractual requirement; and (c) whether the government paid a particular claim in full despite its actual knowledge that certain requirements were violated.  *Id.* at 194–95.

Here, even if the Henderson Defendants' PPP application contained a false statement, the Court should nonetheless dismiss the complaint because the Seikels have not sufficiently alleged the materiality of the statements.  Most importantly, the Seikels fail to expressly allege that the purported falsity of the Henderson Defendants' PPP applications were material to the government's decision to issue PPP funding.[23]  *See* ECF No. 1 ¶¶ 170–185.  As the Supreme Court has stated that failure to comply with a certain statutory or regulatory requirement is, alone, insufficient to establish the materiality threshold, the Seikels' complaint insufficiently alleges that the purported failure of the Henderson Defendants to satisfy the size standard, and representations regarding the same, would have been material to the issuance of the PPP loans.  Moreover, the narrow materiality considerations referenced in § 1102(d)(2)(B) of the CARES Act—which address only whether a borrower's businesses were in operation on March 1, 2020 and whether those businesses had employees for whom they paid salaries and payroll taxes—make clear the insufficiency of the "materiality" allegations in the Seikels' complaint.[24]  The Court should thus dismiss the complaint for failure to state a claim upon which relief can be granted.

### 3.      The Court Should Not Grant Leave to Amend the Complaint.

To the extent the Seikels argue in response that they should be granted leave to amend the complaint, the Court should decline such a request.  The Federal Rules of Civil Procedure provide that a court should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Here, the Seikels have failed to amend the complaint even once since it was originally filed on October 22, 2020, despite the facts purportedly uncovered by the Seikels' investigation

---

[23] Nor could the Seikels establish materiality as to the CARES Act.  Section 1102(d)(2)(B) states that, "In evaluating the eligibility of a borrower for a loan under section 7(a) of the Small Business Act, (15 U.S.C. 636(a)) with the terms described in this subsection and subsection (c), a lender shall only consider whether the borrower—(i) was in operation on March 1, 2020; and (ii) had employees for whom the borrower paid salaries and payroll taxes."

[24] *Id.*

and the ongoing investigation by the Department of Justice.[25]  To permit the Seikels to amend their complaint over two years after it was originally filed would thus be unjust and the Court should decline to grant the Seikels leave to amend.

## V.   <u>CONCLUSION</u>

WHEREFORE, for all of the foregoing reasons, Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC respectfully request the Court to grant their motion and enter an order dismissing the complaint against them with prejudice.

<table>
<tr><td></td><td><i>/s/ Shawn Angus Morgan</i></td></tr>
<tr><td></td><td>Allison B. Williams (WV ID # 11329)</td></tr>
<tr><td></td><td>Shawn A. Morgan (WV ID # 6640)</td></tr>
<tr><td></td><td>Quentin T. Collie (WV ID # 13830)</td></tr>
<tr><td>STEPTOE & JOHNSON PLLC</td><td>400 White Oaks Boulevard</td></tr>
<tr><td>OF COUNSEL</td><td>Bridgeport, WV 26330</td></tr>
<tr><td></td><td>(304) 933-8000</td></tr>
<tr><td></td><td>allison.williams@steptoe-johnson.com</td></tr>
<tr><td></td><td>shawn.morgan@steptoe-johnson.com</td></tr>
<tr><td></td><td>quentin.collie@steptoe-johnson.com</td></tr>
</table>

*Counsel for Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC*

---

[25] The Seikels also failed to amend their complaint after they became aware of facts that expressly contradict certain allegations in the complaint.  On October 27, 2020, only five days after the complaint in this action was filed, in a separate matter before this Court in which the Seikels were named defendants, *Richards v. Octane Environmental, LLC*, No. 1:18-cv-00158 (N.D. W. Va.), Defendant Alvarez sat for a deposition. *See Richards*, ECF No. 28–9.  Both Seikels were present for this deposition.  As part of this deposition, Alvarez testified, under oath, that he does not own ERG, that he never had an ownership interest in ERG, and that ERG is Henderson's company. *Id.* at 10:5–14; 16;10–21; 17:1–8; 42:5–13.  Alvarez also clarified that, although he was involved in starting ET360, ET360 is now Henderson's company. *Id.* at 32:4–14.  If the Seikels did not amend their complaint to correct the record after learning these salient facts over two years ago, the Court should not grant them leave to do so now.

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February 2023, a true and correct copy of the foregoing "Memorandum of Law in Support of Henderson Defendants' Motion to Dismiss" was electronically filed and served through the Court's CM/ECF system on counsel of record listed as:

| | |
|---|---|
| BARON & BUDD, P.C.<br>OF COUNSEL | William G. Powers<br>Andrew M. Miller<br>The Watergate, 10th Floor<br>600 New Hampshire Avenue, NW<br>Washington, DC 20037 |
| POWELL & MAJESTRO, PLLC | Anthony J. Majestro<br>405 Capitol St., Suite P-1200<br>Charleston, WV 25301 |
| BAILEY & GLASSER, LLP<br>OF COUNSEL | Marc R. Weintraub<br>Alexandra Langley Serber<br>Patricia M. Kipnis<br>209 Capitol St.<br>Charleston, WV 25301 |
| U.S. DEPT. OF JUSTICE | Elizabeth L. Coyne<br>Gregory B. David<br>U.S. Attorney's Office<br>615 Chestnut St., Suite 1250<br>Philadelphia, PA 19106<br><br>Christopher James Prezioso<br>Maximillian F. Nogay<br>U.S. Attorney's Office - Whg<br>PO Box 591<br>Wheeling, WV 26003 |

STEPTOE & JOHNSON PLLC
    OF COUNSEL

/s/  Shawn Angus Morgan
Shawn A. Morgan (WV ID # 6640)
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
shawn.morgan@steptoe-johnson.com

*Counsel for Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC*

15935433