**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA ex rel.
JOSEPH SEIKEL and TERENCE SEIKEL,

      Plaintiffs/Relators,

v.

DAVID B. ALVAREZ; APPLIED
CONSTRUCTION SOLUTIONS, INC.;
ENERGY TRANSPORTATION, LLC;
ENERGY RESOURCE GROUP, LLC;
ET360, LLC; BEAR CONTRACTING, LLC;
BEAR UTILITIES, LLC; JASON P.
HENDERSON; and JOHN DOES NOS. 1-50,
FICTITIOUS NAMES;

      Defendants.

Case No.: 1:23-cv-00001-TSK
Judge: Thomas S. Kleeh

## <u>ALVAREZ DEFENDANTS' MEMORANDUM</u> <u>IN SUPPORT OF MOTION TO DISMISS</u>

## INTRODUCTION

In October of 2020, Relators Joseph Seikel and Terrence Seikel ("Relators") filed a complaint in the Eastern District of Pennsylvania, alleging that the named Defendants submitted fraudulent loan applications for the Paycheck Protection Program ("PPP"), in contravention of the False Claims Act ("FCA") under 31 U.S.C. § 3729 *et seq.* In addition, Relators alleged that Defendants conspired with each other and potentially up to fifty unknown co-conspirators to collectively carry out the alleged fraudulent scheme.

Relators' Complaint is insufficient in several respects—as it has been ever since it was filed over two years ago. First and foremost, Relators are not qualified to bring an action under the plain language of the FCA, a fact which alone necessitates dismissal. Relators do not have insider knowledge that would establish them as an original source of their allegations; on the contrary, they are outsiders, and business competitors at that. Even if Relators were permitted to continue with their claims, the Complaint should be dismissed for failure to state a claim for which relief may be granted. The Complaint consists entirely of vague, generalized allegations that do not meet the requirements of Federal Rule of Civil Procedure 9(b) to plead fraud with particularity. Further, Relators' failure to adequately plead that the entities have engaged in coordinated fraudulent activities cannot sustain a claim of "false claims" as contemplated by the False Claims Act; accordingly, no claim exists that satisfies Federal Rule of Civil Procedure 12(b)(6).

Despite the fact that Relators filed their Complaint 28 months ago—before voters headed to the polls for the presidential election, before the war in Ukraine, before Bob Huggins was enshrined in the Naismith Memorial College Basketball Hall of Fame—they have not once amended their Complaint nor served all the parties that they sued. This Court would be well-advised to put this tumultuous, inherently flawed action to rest, and to grant this Motion to Dismiss.

## BACKGROUND AND PROCEDURAL HISTORY

On March 13, 2020, President Trump declared a state of emergency due to the ongoing COVID-19 pandemic for all States, territories, and the District of Columbia. Additionally, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") which allowed the U.S. Small Business Administration ("SBA") to guarantee 100% of 7(a) loans under a new Paycheck Protection Program ("PPP"). Section 1102(a)(36)(D) of the CARES Act explicitly aims to increase the number of small businesses who may receive emergency loans by providing an expansive definition of the "certain small businesses and organizations" who are eligible: "During the covered period, *in addition to small business concerns*, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan . . . ."[1]

## I.  Definition of Small Business

The SBA has a series of regulations that govern what businesses are eligible for a PPP loan. An entity generally is eligible for a PPP loan if it, combined with its affiliates, is (i) a small business as defined in Section 3 of the Small Business Act (15 U.S.C. § 632), (ii) has 500 or fewer employees whose principal place of residence is in the United States, or (iii) is a business that operates in certain industries and meets applicable SBA employee-based size standards for that industry.[2] The SBA then published additional guidance through frequently asked questions.

In the Paycheck Protection Program Loans Frequently Asked Questions as of July 8, 2022 ("July FAQs")[3], under Question 2:

---

[1] CARES Act, Pub. L. No. 116-136, § 1102(a)(36)(D) (2020) (emphasis added).
[2] *See* Fed. Reg. Vol. 85, No. 73 (Apr. 15, 2020).
[3] *See SBA Support: FAQ for PPP Borrowers and Lenders*, SBA.GOV (July 8, 2022) (emphasis added), available at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (last visited Feb. 28, 2023).

Question: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?

Answer: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

Additionally, a business can qualify for a First Draw PPP Loan as a small business concern *if it met both tests in SBA's "alternative size standard"* as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

A business that qualifies as a small business concern under section 3 of the Small Business Act, 15 U.S.C. 632, may truthfully attest to its eligibility for a First Draw PPP Loan on the Borrower Application Form, unless otherwise ineligible.

As the July FAQs state, the SBA's "alternative size standard" is a two-prong test. First, the entity, and all its affiliated companies, cannot have a maximum tangible net worth in excess of $15 million. Second, the entity, and all its affiliated companies, cannot have an average net income after federal income taxes for two full fiscal years that exceeds $5 million. This test does not require the entity, and its affiliated companies, to have 500 or fewer employees.

## II.  Affiliation Rules

Under the affiliation rules for SBA loans ("SBA Affiliation Rules"),[4] "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." Such control may be either affirmative (*i.e.*, right to take action) or negative (*i.e.*, right to prevent action). Under the SBA

---

[4] 13 C.F.R. § 121.301.

Affiliation Rules, there are four tests based on control that PPP applicants are required to consider when determining whether the applicant has any affiliates. Those tests are:

1. Affiliation based on equity ownership;

2. Affiliation arising under stock options, convertible securities, and agreements to merge;

3. Affiliation based on management; and

4. Affiliation based on identity of interest.[5]

The SBA's guidance on affiliation for PPP loans points applicants toward the affiliation standards contained in the 2019 version of section 121.301(f), as discussed above.[6] In doing so, the SBA expressly limited the scope of those rules by focusing on only four tests for affiliation.[7] The SBA thus allowed applicants to disregard the other affiliation tests, most notably the test based on the "totality of the circumstances." The SBA's Small Business Compliance Guide: Size and Affiliation A Guide to the SBA's Size Program and Affiliation Rules clearly states that affiliation based on the totality of circumstances does not apply to the Business Loan, Disaster Loan, and Surety Bond Programs.[8]

### III.   Procedural History

Like many small businesses nationwide, the Alvarez Defendants experienced economic hardship as a direct result of the coronavirus pandemic. In an attempt to mitigate that economic hardship, the Alvarez Defendants applied for PPP loans in the early days of PPP.

---

[5] *See* 13 C.F.R. § 121.301; "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" SBA Guideline, Apr. 3, 2020.
[6] Section 1102(e) of the CARES Act permanently rescinded the SBA's February 2020 amendment to section 121.301.
[7] 13 C.F.R. § 121.301(f); "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" SBA Guideline, Apr. 3, 2020.
[8] *See* SBA's Small Business Compliance Guide: Size and Affiliation A Guide to the SBA's Size Program and Affiliation Rules.

On October 22, 2020, Relators filed their complaint under seal in the Eastern District of Pennsylvania. ECF No. 1. Shortly thereafter the Department of Justice began investigating Relators' claims. Although the communications with the Government and discovery to date have necessarily not been a part of public record, undersigned counsel can attest that the Department of Justice first reached out to the Alvarez Defendants on March 25, 2021. Furthermore, counsel can attest that the Alvarez Defendants readily cooperated with the Department of Justice, producing several explanatory memos and thousands of pages of supporting documentation. On July 26, 2022, the Eastern District for Pennsylvania ordered the United States to decide if it was going to intervene and ordered the complaint to be unsealed by August 25, 2022. *See* ECF No. 23. On August 24, 2022, the Department of Justice filed a notice stating that its "investigation has not been completed and, it is therefore unable to decide, as of the Court's deadline, whether to proceed with the action. Accordingly . . . it is not intervening at this time." ECF No. 23. The complaint was then unsealed August 25, 2022. ECF No. 24.

On November 9, 2022, the Alvarez Defendants filed a motion to transfer this litigation to the Northern District of West Virginia. ECF No. 28. Only then did Relators serve the Complaint upon the Alvarez Defendants on November 23, 2022—more than two years after they filed the Complaint. ECF No. 32. The Eastern District of Pennsylvania held a hearing on the Alvarez Defendants' motion to transfer on January 4, 2023, and ruled from the bench that the matter should be transferred because it lacked ties to the jurisdiction. *See* ECF No. 41.

To date, Relators have not served Mark Urso, Bear Contracting, LLC, or Bear Utilities, LLC ("Bear Entities").[9]

---

[9] The Alvarez Defendants understand that the Bear Entities were investigated by the Department of Justice, which discovered no malfeasance by those entities. Afterwards, the SBA forgave the Bear Entities' PPP loans. Despite this investigation, Relators named the Bear Entities as

## ARGUMENT

### I.    Joseph Seikel and Terence Seikel are not qualified to be relators under the FCA because of the Public Disclosure Bar.

The False Claims Act explicitly provides for the ability of private persons—relators—to bring forth actions under the FCA on behalf of the United States Government. 31 U.S.C. § 3730(b). Notwithstanding this fact, the FCA also contains limitations on who can serve as a relator. Particularly, section 3730 provides that a court shall dismiss an action or claim "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed … unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(4)(A). In order to qualify as an "original source," a relator must have either (i) voluntarily disclosed to the Government the information on which their allegations are based, prior to any public disclosure thereof; or (ii) have knowledge independent of and materially adding to the publicly disclosed allegations, and they must voluntarily provide the Government with such information before filing an FCA action. 31 U.S.C. § 3730(e)(4)(B).

Relators in the instant case attempt to argue that they have independent, material knowledge and are an original source of information. *See* ECF No. 1, ¶¶ 23-24. Despite this insistence, Relators provide no more information than that previously disclosed to the public, and generalized, boilerplate language from the statute.

Pursuant to the latest version of the FCA, following the 2010 amendments, "the public-disclosure bar no longer requires actual knowledge of the public disclosure, but instead applies if substantially the same allegations or transactions were publicly disclosed." *U.S. ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 40 (4th Cir. 2016) (citation omitted). A public disclosure

---

Defendants in this action, but to date, three months after serving the Alvarez Defendants—which occurred three months after the Complaint was unsealed—Relators have yet to serve the Bear Entities.

need not be an official Government disclosure to trigger the public disclosure bar. "Courts have unanimously construed the term 'public disclosure' to include websites and online articles," and "news media" to include newspapers and publicly available websites to enable the public disclosure bar to cover a broad range of material that can be easily accessed or seen by the public. *Id.* at 43, n.6; *see also Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011). The 2010 amendments thus restrict the number of private citizens who can qualify as relators to bring an FCA action under 31 U.S.C. § 3730(b). Even if a potential relator does not have actual knowledge of a public disclosure, if they plead substantially the same allegations or transactions that were publicly disclosed "in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or from the news media," their claims will be dismissed unless they are an original source of that information. 31 U.S.C. § 3730(e)(4).

Relators only allege facts that can already be found from public sources. For instance, the West Virginia Secretary of State's website allows members of the public to research domestic business organizations, allowing any internet user to learn a business's office address, mailing address, members, owners, organization year, and purpose, and one can even access annual reports for a fee.[10] Similarly, ProPublica has a search engine on its website to search for PPP loan applications, and providing an organization's name will enable any internet user to learn the location of the organization, the organization's industry, the lender of the loan, the date the loan

---

[10] *WV Secretary of State – Business and Licensing – Corporations – Online Data Services*, WV.GOV (Feb. 2023), available at https://apps.sos.wv.gov/business/corporations/ (last visited Feb. 28, 2023).

was approved, the loan amount, and the loan status.[11] Additionally, Relators' allegations that Defendants are all affiliated because certain individuals are invited to attend a holiday party, and because Relators plucked and critiqued language from a published website, all come from publicly disclosed information. *See* ECF No. 1, ¶¶ 74, 129. The only substantive allegations in the entire 42-page Complaint are the names of the individuals and businesses that Relators allege violated the FCA, drawing speculative inferences from the addresses, industry type, and managers of the Defendant entities to allege fraudulent affiliation. Relators can hardly claim to be an "original source" when none of their allegations contain details beyond publicly available information.

Indeed, the lynchpin of Relators' claims is that the Defendant entities are affiliated entities, and that their composite size rendered them ineligible for PPP loans. *See* ECF No. 1, ¶¶ 172-74, 178, 181, 184 (bringing all four counts against "Affiliated Defendants"). At first glance, the website for Defendant Energy Transportation, LLC (publicly available information) may appear to imply that it belongs to a group of affiliated businesses, as it emphasizes the "8760 Commitment" to provide service "24 hours a day, 7 days a week, 365 days a year" along with its "Industry Affiliates."[12] However, the word "affiliated" with respect to the SBA is a term of art with a strict legal definition, while the word choice on the Energy Transportation website could easily have been one of any number of synonyms that indicate a group of companies cooperating to serve the public, such as "associates" or "partners." *See* 13 C.F.R. § 121.301 (defining "affiliation" for the SBA). Notably, the "affiliates" listed on the Energy Transportation website

---

[11] *Tracking PPP: Search Every Company Approved for Federal Loans*, PROPUBLICA.ORG (Jan. 11, 2023), available at https://projects.propublica.org/coronavirus/bailouts/ (last visited Feb. 28, 2023).

[12] *Company – Energy Transportation*, ET8760.COM, available at http://www.et8760.com/company/ (last visited Feb. 28, 2023).

include Bear Contracting, LLC, and Bear Utilities, which were already investigated by the Department of Justice and had their loans forgiven, and whom Relators chose not to serve.[13]

Finally, Relators neglect to mention that they are direct competitors to the Alvarez Defendants. They are owners and members of Octane Environmental, LLC, an Ohio corporation with its principal office in Bridgeport, West Virginia.[14] Even reviewing the specifics-lacking Complaint in the light most favorable to Relators, it strains credulity that they can simultaneously be competitors—inherently outsiders—and "insiders who have direct knowledge." ECF No. 1, ¶ 23. At this stage, Relators' allegations must be taken as true, but the omission of the objectively verifiable fact that they are business competitors diminishes the credibility of the Complaint.

## II.   Relators' Complaint Lacks Substantive Facts Supporting Violation of Affiliation Tests and in the Alternative, Allege the Wrong Size Standards under the PPP, thus Compelling Dismissal.

Even assuming that Relators are eligible "original sources" to bring FCA claims, their Complaint must nevertheless be dismissed due to its prolific legal errors demonstrating a lack of understanding about the PPP, the SBA, or the Defendants that they insist violated the False Claims Act. Relators allege that the Alvarez Defendants submitted false PPP loan applications to the Government without providing facts to support the Affiliation of the Alvarez Defendants with the Henderson Defendants, and Relators completely fail to address the alternative size test.

---

[13] *See BEAR CONTRACTING, LLC – Tracking PPP – ProPublica*, PROPUBLICA.ORG (June 1, 2021), available at https://projects.propublica.org/coronavirus/bailouts/loans/bear-contracting-llc-6366057000 (last visited Feb. 28, 2023);
*BEAR UTILITIES, INC. – Tracking PPP – ProPublica,* PROPUBLICA.ORG (June 1, 2021), available at https://projects.propublica.org/coronavirus/bailouts/loans/bear-utilities-inc-7860847208 (last visited Feb. 28, 2023).
[14] *WV Secretary of State Business Entity Search*, WV.GOV (Feb. 2023), available at https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=5FhHg7atDnCHTDl9nmvkPQ==&Search=jSe9JsH%2f91xFeDRutIDQmw%3d%3d&Page=0 (last visited Feb. 28, 2023).

## A.      Relators Fail to Plead Sufficient Facts Supporting Allegations of Affiliation.

Instead of using the proper test to plead affiliation among all Defendants, Relators instead rely upon the "totality of the circumstances" test. ECF No. 1, ¶ 60. While the SBA has used the totality of the circumstances test in other circumstances, recent guidance has emphasized the affiliation standards in the 2019 version of 13 C.F.R. § 121.301, redirecting the focus to four specific affiliation tests and away from other possible affiliation tests, including the "totality of the circumstances" test. *See Background and Procedural History Section II, supra.* As discussed above, the only four tests that can determine whether entities are "affiliated" for the purposes of PPP, are as follows:

1.  Affiliation based on equity ownership;

2.  Affiliation arising under stock options, convertible securities, and agreements to merge;

3.  Affiliation based on management; and

4.  Affiliation based on identity of interest.[15]

Even when taking the allegations in Relators' Complaint as true, the facts they assert bear no relation to these four tests and therefore cannot support any FCA claims. For instance, Relators allege that Defendants are affiliated because of "how the entities were originally formed, by the same individuals, and at many of the same addresses." ECF No. 1, ¶ 74. However, the issue of how the entities were originally formed is not a relevant consideration when all Defendant entities were formed prior to 2020. Likewise, a shared mailing address does not support any of the four pertinent tests; sharing a physical mailing location does not indicate any sort of affiliation by equity ownership, stock options, securities, mergers, management, or identity of interest. Later in the Complaint, Relators insist that all Defendants are affiliated entities because David Alvarez

---

[15] *See* 13 C.F.R. § 121.301; "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" SBA Guideline, Apr. 3, 2020.

"utilizes the '8760 company' motto as part of a marketing slogan to sell . . . the Affiliated Defendants' ability to provide services to his clients 24 hours a day, 365 days a year." *Id.* This slogan does nothing to point towards any of the four tests of affiliation. Cross-marketing strategies do not indicate affiliated ownership, equity, management, or identity of interest, nor does the occasional sharing of resources or information technology services. *See* ECF No. 1, ¶¶ 103-105, 127. Companies operating in the same or similar locations may have limited options for suppliers of trucks, equipment yards, or IT providers; the decision to cooperate and reduce expenses for all parties involved shows professionalism, not affiliation. Finally, inviting employees from local companies in the same industry to a holiday party, ECF No. 1, ¶ 129, points to cordial management, not affiliated management, of the respective businesses.

### B.    Relators Allege the Incorrect Test for Size Standards Under the PPP.

Relators assert that "[w]ith limited exceptions not applicable here, only small businesses with 500 or fewer employees are eligible borrowers in the PPP." ECF No. 1, ¶ 4. Relators rely upon the size standards set by the North American Industry Classification System ("NAICS") code, *see* ECF 1, ¶¶ 52-55, but they fail to mention the relevant alternative size standard. Since the first version of the PPP FAQs were published in June 2020—months before Relators filed the Complaint—the FAQs have explained that to qualify under the alternative size standard, a business, and all its affiliated companies, need only meet two requirements: (1) have a maximum tangible net worth not exceeding $15 million; and (2) the average net income after federal income taxes (excluding any carry-over losses) of the business for the two fiscal years before the date of the application must not exceed $5 million.[16] For the express purpose of applying for PPP loans,

---

[16] *SBA Support: FAQ for PPP Borrowers and Lenders*, SBA.GOV (July 8, 2022), available at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (last visited Feb. 28, 2023); *SBA Support: FAQ for PPP Borrowers and Lenders*, SBA.GOV (June 25, 2020), available at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (last visited Feb. 28, 2023).

businesses can qualify as a "small business concern" that is eligible under section 3 of the Small Business Act, 15 U.S.C. § 632. Even when taking Relators' allegations as true and operating under the allegations that the Alvarez Defendants are affiliated, Relators' failure to consider the alternative size test further demonstrates their lack of insider knowledge, and perhaps that they were a tad too eager to get the Complaint filed without adequate preparation. The first version of the Paycheck Protection Program Loans Frequently Asked Questions was published on June 25, 2020, which was approximately four months before Relators filed the Complaint. In fact, the initial FAQs were updated twice—August 11, 2020, and October 7, 2020—before Relators filed the Complaint, providing them with three distinct opportunities to inform themselves of the alternative size standard.[17] Instead, they dismiss this alternative test to qualify for PPP loans with a simple wave of the hand: they call it a mere "limited exception[] not applicable here." ECF No. 1, ¶ 4.

Relators attempt to drive a nail into a non-existent coffin by alleging that the Alvarez Defendants planned to close the business of one of the entity Defendants before applying for the PPP loans. ECF No. 1, ¶ 135. However, Relators failed to check that the argument was dead and done before trying to nail that coffin shut, and the Complaint's vague allegations do not deliver a finishing blow. Plans to shut down a business, only to change one's mind and apply for PPP loans in an effort to keep the business alive, do not constitute a violation of the FCA. The Complaint consists wholly of ambiguous statements, as Relators make veiled accusations that—when taken together—suggest the PPP loan funds were used improperly. Relators try to piece together claims without actually coming forth with definitive accusations, praying that the "totality of the

---

[17] *See generally SBA Support: FAQ for PPP Borrowers and Lenders*, SBA.GOV, available at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (Feb. 28, 2023).

circumstances" they pepper throughout the 42-page Complaint will suffice, but their prayers are misplaced, as the legal standard that they plead is the incorrect standard for their claims.

## III.   The Complaint Fails to State a Valid Claim for which Relief may be Granted; as such, the Case should be Dismissed.

Taking all the allegations in Relators' Complaint—including the assertion that they have specialized, insider knowledge that renders them able to serve as relators in the first place—as true, the Complaint must nonetheless be dismissed because it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### A.   Relators fail to plead fraud with particularity.

When pleading fraud, the Federal Rules of Civil Procedure require a party to meet a heightened pleading standard. Specifically, the Rules provide: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Fourth Circuit has held that this heightened standard applies in FCA cases, as "False Claims Act claims are fraud claims, [so] a higher standard applies: Fraud-based claims must be pleaded with particularity[.]" *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 194 (4th Cir. 2022). At their core, all FCA claims pertain to presentment of a claim for payment to the Government; as such, the particularity requirement goes to the element of that presentment. *Id.*

Even among circuits that are strict with Rule 9(b) particularity requirements, the Fourth Circuit takes an exceptionally restrictive view: a plaintiff must plead details of specific false claims and cannot "allege simply and without any stated reason for [their] belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451,

457 (4th Cir. 2013) (quotations omitted). The Fourth Circuit has established two methods for pleading presentment that it will consider sufficiently particular under Rule 9(b): either (1) "allege with particularity that specific false claims actually were presented to the government for payment," which requires the relator to "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"; or (2) allege a pattern of conduct that would "*necessarily* have led[] to submission of false claims" to the government. *Nicholson*, 42 F.4th at 194; *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (emphasis in original). This standard makes pleading fraud difficult even for insider relators if they lack information to billing-related information to determine the "who, what, when, where, and how" of the alleged false representations. *See Nicholson*, 42 F.4th at 195. The burden for outsider relators who are unable to access communications between a defendant and the government is still higher.

Relators have not met the heightened pleading requirements that could substantiate a claim of fraud under the FCA. Their allegations are threadbare; even taking them as true, as required at this stage, they are insufficient to meet the federal pleading requirements for fraud. For instance, Relators allege that "[i]n March 2020, Alvarez convened a meeting among senior personnel from Defendants ACS, Energy Transportation, and ET360." ECF No. 1, ¶¶ 9, 135. Relators do not provide any specific details, such as where this alleged meeting took place, which senior personnel allegedly attended, or the exact date or time of day the meeting allegedly occurred.

Most of the allegations in the Complaint are conclusory statements, attempting subtle suggestions and hints rather than stating anything clear or substantive. In the section of the Complaint where Relators plead that all Defendants share common management, the Complaint only makes generic allegations: "At the direction of Defendant Alvarez, there has been, and

continues to be, substantial involvement by the same key personnel at the Affiliated Defendants, including Defendant Jason Henderson"; "Alvarez directed some of the Affiliated Defendants to carry out tasks on behalf of other Affiliated Defendants"; "At the end of each year, Alvarez held a business review meeting that was attended by all of the general managers from the Affiliated Defendants." ECF No. 1, ¶¶ 98, 106, 109. These statements are crucial components to establishing Relators' claims, yet they contain minimal details. Aside from reiterating allegations against Defendant Alvarez and Defendant Henderson, Relators fail to allege any specific details about the time of the involvement, tasks, or meetings; the names of the "same key personnel" who allegedly are repeatedly involved and should therefore be identifiable; or what alleged services were provided in values claimed to exceed hundreds of thousands of dollars. These assertions try to imply that illegal collusion took place and that the affiliation rendered the PPP applications fraudulent, but without the "who, what, when, where, and how," the Complaint only can assert a legal conclusion. *See Nicholson*, 42 F.4th at 195 (Affirming the district court's dismissal of a complaint where the allegations "amount[ed] to not much more than saying that [Defendants] were using commissioned salespeople to submit false claims, a legal conclusion.")

Relators essentially attempt to rely on the inapplicable "totality of the circumstances" approach to argue through inference that an FCA violation occurred. They repeatedly use language that implies all the vague, generalized allegations in the Complaint, when amassed, state a valid claim: "As a result of the Affiliated Defendants' misconduct, all their PPP Applications submitted with such false certifications constituted false claims"; "As a result of the Affiliated Defendants' false and/or fraudulent representations and conduct in securing small business PPP loans . . ."; "As alleged in this Complaint, one facet of the Affiliated Defendants' scheme involved . . . a pattern and practice of false and misleading representations". ECF No. 1, ¶¶ 137-39. The allegations of

conspiracy are no more fleshed out: "As described in this Complaint, Defendants intentionally conspired with one or more of these affiliated entities to get a false or fraudulent claims allowed or paid by the United States"; "Through the acts and omissions described in this Complaint, Defendants . . . knowingly agreed and conspired to defraud the Government"; "Defendants caused to be presented, made and/or used false records or statements". ECF No. 1, ¶¶ 156-59. *See United States ex rel. Godfrey v. KBR, Inc.*, 360 Fed. Appx. 407, 413 (4th Cir. 2010) (affirming dismissal of FCA conspiracy claim where the complaint failed to plead sufficient facts to show that the conspirators intended to defraud the government).

These allegations are insufficient and can hardly be called allegations rather than legal conclusions. "Claiming to know something based on working in an undisclosed role at the relevant company, and based on participation in vaguely described events cannot make a series of conclusory legal statements into a particularized allegation." *Nicholson*, 42 F.4th at 195-96. The steep requirements for pleading under Rule 9(b) cannot be satisfied by allegations that are "in essence just a restatement of the legal standards . . . plus the [defendant's] name." *Id.* at 195. While the standard may appear harsh, the Fourth Circuit has acknowledged that "Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and 'quasi-criminal nature' of FCA liability." *Grant*, 912 F.3d at 197. The stringent requirements allow Rule 9(b) to effectuate its purposes of "providing defendants notice of their alleged misconduct, preventing frivolous suits, and eliminating fraud actions in which all the facts are learned after discovery," which are especially crucial in an FCA claim brought by a relator that asserts it has exclusive, insider knowledge of the alleged conduct. *Id.*

Relators have not amended their complaint a single time since they first filed it in the Eastern District of Pennsylvania in October of 2020. During that time, the Department of Justice

has also been investigating the Alvarez Defendants. If Relators did not take advantage of the two plus years to add specific details to their allegations—whether derived from their own investigation or the Government's—they should not be permitted to do so now. Their vague, "totality of the circumstances" Complaint is insufficient under Rule 9(b) and has been specifically rejected by the SBA, and therefore, this action should be dismissed.

**B.      The Complaint does not sufficiently plead an FCA violation.**

As explained in further detail above, Relators have not plead their allegations of fraud with sufficient particularity under Rule 9(b). As the name suggests, the "False Claims Act" inherently necessitates a "false" claim—without sufficient detail to allege fraud, the Complaint fails to plead that the Alvarez Defendants violated the FCA. Therefore, Relators' Complaint should be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6).

While at this stage, the Complaint's allegations must be taken as true, the same tenet "is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Indeed, on a motion to dismiss, the Supreme Court of the United States has repeatedly asserted that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). In this case, the Complaint almost entirely consists of conclusory statements masquerading as factual allegations, and they are not entitled to a presumption of truth.

Without actual, particularized assertions of fact to support the Complaint, Relators have not pleaded a claim for which relief may be granted. The Complaint tries to assemble a jigsaw puzzle of vague allegations to suggest that Relators were affiliates who collectively submitted false PPP applications, but these indefinite, generalized statements neither "describe the time, place, and contents of the false representations, as well as the identity of the person making the

17

misrepresentation and what he obtained thereby," nor allege a pattern of conduct that would "*necessarily* have led[] to submission of false claims" to the government. *Grant*, 912 F.3d at 197. Relators have not plead with particularity that Defendants are affiliated. Therefore, Relators have not pleaded that Defendants—individuals and entities—misrepresented their size. The Alvarez Defendants were individually qualified for the PPP loans, and without false or fraudulent statements, or to use the name of the Act itself, *false claims*, no violation of the FCA has been alleged. Even if these claims about size were alleged, the Complaint still must be dismissed because Relators did not sufficiently allege all additional necessary elements. In an FCA action for submitting false claims, a relator must plead the following elements:

> (a)  The defendant submitted, or caused to be submitted, a claim for payment or approval;
>
> (b)  The claim for payment or approval was false;
>
> (c)  The falsity was material to the government; and
>
> (d)  The defendant acted with the required scienter, meaning the defendant either:
>
> > (i)  Knew that the claim was false;
> >
> > (ii)  Acted in deliberate ignorance of the truth or falsity of the relevant claim; or
> >
> > (iii)  Acted in reckless disregard of the truth or falsity of the relevant claim.

*See* 31 U.S.C. §§ 3729(a)(1)(A), 3729(b)(1); *see also Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 182 (2016). The first element is commonly referred to as the "presentment" element, as it requires that a defendant presented—whether by submitting directly or causing to be submitted—a claim for payment or approval. *See Nathan*, 707 F.3d at 455. These elements are conjunctive, meaning that all elements must be met for FCA liability.

Relators have sufficiently pleaded the first element, that the Alvarez Defendants submitted a claim for payment or approval: the PPP applications. However, even operating under the

assumption that Relators' allegations are true on the second element—that the applications had false misrepresentations—the failure to sufficiently allege the other elements means that the Complaint does not adequately state a claim for violation of the FCA.

Relators do not even address the third element, that the allegedly false statements were material to the Government. The only mention of materiality is "the Affiliated Defendants also made, used, or caused to be made or used, false records or statements material to false or fraudulent claims[.]" ECF No. 1, ¶ 167. The Supreme Court has held that a misrepresentation "must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 579 U.S. at 192. A misrepresentation is not "material" solely because the Government has designated compliance with a certain statutory, regulatory, or contractual requirement as a condition of funding; such a provision is relevant but not dispositive. *Id.* at 178. In determining whether a misrepresentation is material, courts consider whether: (a) the government expressly designated the provision as a condition of payment; and (b) evidence exists that the defendant knew the Government consistently refuses to pay claims based on noncompliance with the particular statutory, regulatory, or contractual requirement. *Id.* at 194-95. The Supreme Court has specifically emphasized that "the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations." *Id.* at 196. Relators have failed to plead that the allegedly false statements the Alvarez Defendants submitted to the Government were material to the Government's decision to grant the PPP loan applications. The implication that falsehood in any form is "material" is not only rejected by the Supreme Court, but also by the Fourth Circuit's own pleading requirements. The Fourth Circuit has held that a relator must allege "both materiality *and* a 'false statement or fraudulent course of conduct' as distinct elements of an FCA claim." *United States ex rel. Rostholder v. Omnicare, Inc.*,

745 F.3d 694, 702 (4th Cir. 2014) (emphasis in original). Relators have failed to plead this element separately at all.

Furthermore, Relators do not sufficiently allege that the Alvarez Defendants had the requisite scienter to violate the FCA. As defined in the Act itself, "knowing" and "knowingly" mean that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information[.]"[18] 31 U.S.C. § 3729(b)(1). Relators acknowledge such in paragraph 72 of the Complaint where they provide the statutory definition. Despite this fact, Relators merely plead that "Defendants knew, or at the very least should have known, that they were affiliated." ECF No. 1, ¶ 64. However, "should have known" is not sufficient to meet the definition of "knowing" as defined by the FCA. Thus, Relators did not meet the higher standard of actual knowledge, nor the other possible definitions of deliberate ignorance or reckless disregard. Rather than pleading specific facts of actual knowledge, Relators again try to allege that the Alvarez Defendants had actual knowledge through implication and throwing vaguely related factual allegations together, in what is best described as a "totality of the circumstances" approach. "Defendant Alvarez is the Interim Chairman of MVB Financial Corp. . . . Alvarez also serves on MVB's bank loan approval committee." *Id.* Unable to plead that Alvarez had actual knowledge, Relators instead try to insinuate that he knew the requirements for an SBA emergency loan program by virtue of his position.

---

[18] Alvarez Defendants bring to the Court's attention this lower standard. However, Relators in their Complaint plead the higher standard, which they cannot meet, nor can they meet the lower standard which actually applies here.

**IV.     Relators should be Denied leave to Amend the Complaint.**

Relators may argue that they should be permitted to amend the Complaint to cure its deficiencies and avoid dismissal. However, the circumstances of this case encourage the denial of leave to amend.

The Federal Rules provide that a court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Nicholson*, 42 F.4th at 197. In the instant case, justice would be better effectuated by denying leave to amend.

Relators have not amended the Complaint *once* since they filed it in the Eastern District of Pennsylvania on October 22, 2020. Relators have had more than two years to amend the Complaint to provide supplemental facts, whether learned by their own investigations or from the Department of Justice's simultaneous investigation, yet they have not chosen to do so. Parties have a duty to introduce important evidence on which they intend to rely in the litigation as soon as is reasonably possible. Relators assert that their knowledge is based on "an independent investigation," ECF No. 1, ¶ 23, which would have taken place before they filed the Complaint. To withhold facts that were known at the time of filing for more than two years is not only suspicious but also prejudices the Alvarez Defendants, who have been spending over two years defending themselves against vague allegations with heavy consequences. *See Nicholson*, 42 F.4th at 199 (affirming district court's finding of bad faith where plaintiff waited years to amend his Complaint with facts he knew at the time of the filing of the original Complaint). In this situation, the "interests of justice" point to denying leave to amend, not granting it.

## CONCLUSION

For the reasons stated above, the Alvarez Defendants respectfully request that this Court dismiss the claims asserted in the Complaint with prejudice, as Relators have failed to plead a claim for which relief can be granted under the requirements of Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure; or in the alternative, for lack of jurisdiction over this action as relators are not qualified to bring this *qui tam* matter.

Dated: February 28, 2023

DAVID B. ALVAREZ; APPLIED
CONSTRUCTION SOLUTIONS, INC.; AND
ENERGY TRANSPORTATION, LLC

By Counsel

*/s/ Marc R. Weintraub*_____
Marc R. Weintraub (WVSB # 8055)
Bailey & Glasser LLP
360 Central Avenue, Suite 1450
St. Petersburg, FL  33701
Telephone:  727.894.6745
Facsimile:  727.894.2649
Email:  mweintraub@baileyglasser.com

Alexandra L. Serber (*admitted pro hac vice*)
Bailey & Glasser, LLP
1055 Thomas Jefferson St, Suite 540
Washington, DC  20007
Telephone:  202.463.2101
Facsimile:  202.463.2103
Email:  aserber@baileyglasser.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2023, the foregoing was electronically

filed and served through the Court's CM/ECF system to counsel of record.

*/s/ Marc R. Weintraub*_____
Marc R. Weintraub (WVSB # 8055)