IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA *ex rel.*
JOSEPH SEIKEL and TERENCE SEIKEL,

    Plaintiffs,

v().    Civil Action No.  1:23-cv-00001
    Honorable Thomas S. Kleeh

DAVID B. ALVAREZ; APPLIED
CONSTRUCTION SOLUTIONS, INC.;
ENERGY TRANSPORTATION, LLC;
ENERGY RESOURCE GROUP, LLC;
ET360, LLC; BEAR CONTRACTING, LLC;
BEAR UTILITIES, LLC; JASON P.
HENDERSON; and JOHN DOES NOS. 1-50,
FICTITIOUS NAMES;

    Defendants.

**REPLY IN SUPPORT OF
HENDERSON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**I.  INTRODUCTION**

Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC (collectively, the "Henderson Defendants"), by and through counsel, submit this reply in support of their motion to dismiss the amended complaint. The Court should dismiss the Amended Complaint for False Claims Act Violations Under 31 U.S.C. §§ 3729–3733 filed by Joseph Seikel and Terence Seikel (collectively, "the Seikels") for the following reasons. First, the public disclosure bar applies to the Seikels' claims, and the Seikels do not qualify as an original source. Second, the Seikels fail to allege fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). Third, the Seikels fail to state a claim under the False Claims Act ("FCA") upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Despite the

Seikels' vociferous arguments in support of their claims, their words cannot cure the deficiencies of the amended complaint.

II.     **ARGUMENT**

The Court should dismiss the amended complaint against the Henderson Defendants for three reasons. First, the public disclosure bar applies to the Seikels' claims, and the Seikels are not original sources. Second, the Seikels have failed to allege fraud with particularity. Third, the Seikels fail to state a claim under the FCA upon which relief can be granted.

### A. The Seikels' Claims Are Foreclosed by the Public Disclosure Bar, and the Seikels Are Not An Original Source.

First, the Court should dismiss the amended complaint because the claims alleged by the Seikels are foreclosed by the public disclosure bar, and the Seikels cannot overcome that bar because they do not qualify as an original source.

As previously stated, the public disclosure bar provides that courts "shall dismiss an action or claim under [§ 3730] . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4). "The public disclosure bar 'encompasses actions even partly based upon prior public disclosures.'" *United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 254 (4th Cir. 2012). Further, pursuant to the latest version of the FCA, "the public-disclosure bar no longer requires actual knowledge of the public disclosure, but instead applies if substantially the same allegations or transactions were publicly disclosed." *United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 40 (4th Cir. 2016) (citation omitted).

Although the Seikels contend that the publicly available information regarding the organization and management of the Defendant entities does not support application of the public

disclosure bar, the Seikels rely on such publicly available information in support of their claims. For example, the Seikels cite information from the Defendants' websites and marketing materials in an effort to establish their affiliation. *See, e.g.*, ECF No. 80 ¶¶ 74, 129. Further, the Seikels cite to and rely upon information about the ownership and management of the Defendant entities, as publicly available on the West Virginia Secretary of State website, in their attempt to support arguments for affiliation by ownership and management. *Id.* ¶¶ 27, 29, 31, 33, 35, 36. As such, the Seikels' reliance on the publicly available information regarding the Henderson Defendants' and other Defendants' ownership, management, or organization triggers application of the public disclosure bar.

Despite their contentions to the contrary, the Seikels' self-serving claims that they are original sources are insufficient to establish them as such. The FCA defines an original source, in part, as an individual "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31. U.S.C. § 3730(e)(4)(B). "To establish that his knowledge meets this standard, a relator must 'allege specific facts—as opposed to mere conclusions—showing exactly how and when' he obtained it." *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 276 (4th Cir. 2012) (citation omitted). In their response, the Seikels highlight the numerous allegations they added to their amended complaint after the failures of their initial complaint were identified by the Henderson Defendants and Alvarez Defendants. The Seikels nonetheless continue to fail to sufficiently identify how they are insiders and how and when they obtained the information which they purport makes them insiders. In the absence of such specific allegations in the amended complaint, the Seikels cannot sufficiently plead that they are an original source and thus cannot defeat the public disclosure bar.

Furthermore, regardless of the veracity of the allegations, the Seikels' identification of

potential actual original sources of information emphasizes that the Seikels, in fact, do not qualify as an original source. For a purported relator to demonstrate he has direct knowledge sufficient to qualify as an original source, "a relator 'must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his "own labor unmediated by anything else."'" *Solis v. Millennium Pharms. Inc.*, 852 F. App'x 298, 300 (9th Cir. 2021) (memorandum decision) (citations omitted). For example, in *United States ex rel. Devlin v. State of California*, 84 F.3d 358 (9th Cir. 1996), the Ninth Circuit concluded that purported relators were not an original source because their "knowledge was not direct and independent because they did not discover firsthand the information underlying their allegations of fraud. They did not see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else, but derived it secondhand" from an employee of the entity against which the claim was brought, "who had firsthand knowledge of the alleged fraud." *Id.* at 361; *see also In re Nat. Gas Royalties*, 562 F.3d 1032, 1046–47 (10th Cir. 2009) (concluding that "secondhand knowledge from employees of various Defendants does not constitute 'direct and independent' knowledge" and that purported relators were thus not an original source). Similarly, here, the allegations of the amended complaint, highlighted by the Seikels' chart presented in their response brief, show that they did not observe the actions underlying their claims of fraud but instead rely upon firsthand experiences and information obtained by others. *See, e.g.*, ECF No. 93 at 9–12. Accordingly, the Seikels cannot be an original source of the information upon which their claims are founded.

    **B.**    **The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

        **1.**    **The Seikels Fail to Plead Fraud with Particularity.**

Second, the Court should dismiss the amended complaint because the Seikels fail to plead fraud with particularity. Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or

4

mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a plaintiff asserting a claim under the [FCA] 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained.'" *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456–57 (4th Cir. 2013) (citation omitted).

Here, the Seikels have failed to allege their claims of fraud with sufficient particularity. The Seikels point to several allegations in their amended complaint which they contend satisfy the particularity requirement, but the Seikels nonetheless still fail to identify specific allegations in the amended complaint containing the specific details regarding the time, place, and contents of the actual false representations allegedly made by the Henderson Defendants. The Seikels' allegations of fraud thus lack the required specificity under Rule 9(b) and should be dismissed.

    **2.**    **The Court Should Dismiss the Amended Complaint Because the Seikels Fail to Plead a Claim Under the FCA Upon Which Relief Can Be Granted.**

        **a.**    **The Seikels Fail to Sufficiently Plead That the Henderson Defendants Were Affiliated with the Other Defendants.**

Third, in their response, the Seikels still fail to recognize and apply the proper standards for affiliation. As an initial matter, the Seikels expressly maintain their reliance on the inapplicable "totality of the circumstances" test. ECF No. 93 at 16, 18. The Seikels further argue that the standards for affiliation under 13 C.F.R. § 121.301(f) versus the standards under 13 C.F.R. § 121.103 are a "distinction without a difference," *see id.* at 18, but the Seikels' position in this regard is not only incorrect but also blatantly ignores the requirements of the applicable standards under which their pleadings fail. Although the SBA's guidance regarding the CARES Act initially suggested that affiliation should be tested under 13 CFR § 121.103(a), the SBA's more recent guidance on affiliation points applicants toward the affiliation standards contained in the 2019

version of Section 121.301(f). In doing so, the SBA expressly limited the scope of those rules by focusing on only those four tests for affiliation. *See* 13 CFR § 121.301(f).[1]

Under 13 CFR § 121.301(f), there are four tests for determining whether a PPP applicant has affiliates: (1) affiliation based on ownership; (2) affiliation arising under stock options, convertible securities, and agreements to merge; (3) affiliation based on management; and (4) affiliation based on identity of interest. *Id.* at § 121.301(f)(1)–(4). Each of these involves specific requirements, which the Seikels fail to apply.

Based on the specific requirements of these tests, the second and fourth enumerated tests do not apply. The second enumerated test (affiliation arising under stock options, convertible securities, and agreements to merge) is inapplicable because there are no stock options, convertible securities, or agreements to merge applicable to ERG or ET360. The fourth enumerated test (affiliation based on identity of interest) is also inapplicable on its face because Henderson and Alvarez do not satisfy the definition of "close relatives" pursuant to 13 C.F.R. § 120.10.[2] The Seikels have failed to identify any allegations in their amended complaint that would constitute a sufficient pleading of affiliation under either of these standards.

The Seikels fail to sufficiently plead affiliation under the first test—for "affiliation based on ownership." Under that test, affiliation arises when "an individual, concern, or entity . . . owns or has the power to control more than 50 percent of the concern's voting equity." *Id.* § 121.301(f)(1). The Seikels allege that Alvarez has an ownership interest in ERG and ET360. ECF No. 80 ¶¶ 31, 33. The Seikels do not, however, allege that Alvarez owns more than 50 percent of the voting equity in either entity. *See id.* In their response, the Seikels continue to rely on

---

[1] *See also* Office of Capital Access, *Affiliation Rules for Paycheck Protection Program*, SBA.GOV (Apr. 3, 2020), https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program.
[2] In their response, the Seikels attempt to make an argument based on an "identity of interest" test, but such argument fails to apply the applicable standard. *See* ECF No. 93 at 17–18.

circumstantial allegations of common ownership while failing to identify any allegations that would demonstrate that Alvarez owns or has the power to control more than 50 percent of the Henderson Companies' voting equity. ECF No. 93 at 16–17. In the absence of such allegations, the Seikels' theory of affiliation based on ownership fails.

The Seikels' remaining allegations—regarding a theory of affiliation by common management, pursuant to the third test—also fail as a result of the Seikels' disregard for the applicable standards. Under the test for "affiliation based on management," "[a]ffiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns." 13 C.F.R. § 121.301(f)(3). Further, "[a]ffiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns." *Id.* Finally, "[a]ffiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *Id.*

As noted on the publicly available West Virginia Secretary of State website, ET360 is a member-managed limited liability company, and Jason Henderson is the sole member.[3] Pursuant to West Virginia Code Section 31B-4-404, "any matter relating to the business of the company may be decided by a majority of the members." Henderson, as the sole member, controls the management of ET360. As noted on the West Virginia Secretary of State website, ERG is a manager-managed limited liability company.[4] Pursuant to West Virginia Code Section 31B-4-404,

---

[3] Information regarding ET360 is publicly available on the West Virginia Secretary of State website: https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=T6InEQ+a1MOwRuDJV6xs0g==&Search=%2f6JcgAC5d756touNixfy8w%3d%3d&Page=0.

[4] Information regarding ERG is publicly available on the West Virginia Secretary of State website: https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=58nN/550O27FJ7pbwWK/cQ==&Search=tFooM7gt0Q7ZFD3whb%2fsp%2fdPe5IOoqhiaSpdicS1Xtg%3d&Page=0.

in a manager-managed limited liability company, "any matter relating to the business of the company may be exclusively decided by the manager or, if there is more than one manager, by a majority of the managers." Jason Henderson, John Henderson, and Rick Richards are designated as managers of ERG and thus control the management of ERG.[5] Accordingly, neither Alvarez nor any other Defendant had the type of management control sufficient to support a finding of affiliation. The Seikels have not sufficiently pleaded otherwise. Instead, again, the Seikels' amended complaint does not contain allegations about who, under the structure of the entities, controls the management but contains only allegations that are irrelevant to the test for affiliation based on management under the applicable standard. *See* ECF No. 80 ¶¶ 112–26. The argument presented by the Seikels in response again consists of only their muddled attempt to invoke the inapplicable "totality of the circumstances" approach. *See* ECF No. 93 at 17. As the Seikels allegations do not sufficiently plead affiliation under the *applicable* standards, the Seikels' claims fail.

        **b.    In the Alternative, the Seikels Fail to Sufficiently Plead That the Alternative Size Standard Does Not Apply.**

As the Seikels recognize, the SBA has expressly stated that the Alternative Size Standard is a viable basis for PPP application eligibility. The Seikels attempt to refute this clearly established fact by contending that the Henderson Defendants submitted their applications before the Alternative Size Standard was applicable, but such argument fails. As previously discussed, the April 6, 2020 FAQs concerning the Alternative Size Standard expressly apply to "First Draw PPP Loans," without restriction on when applications are submitted. Further, although the Seikels attempt to rely on authority with regard to the retroactivity of statutes, such authority is not controlling or persuasive here. The Alternative Size Standard was not created by the April 6, 2020

---

[5] *Id.*

FAQs, and the April 6, 2020 FAQs are not legislative enactments. Rather, the April 6, 2020 FAQs merely clarified that the already-existing Alternative Size Standard applied in the context of PPP applications.[6] The Seikels' attempt to temporally restrict the application of the Alternative Size Standard is thus unfounded and would eviscerate the underlying goals and purpose of the PPP loan application process.

The Seikels' response also fails to demonstrate how the amended complaint sufficiently pleads that the Alternative Size Standard is not satisfied. The Seikels contend that they relied on estimates based on the industry but fail to indicate that those estimates are supported by any actual allegations regarding the Defendants' assets and payroll costs. Such conclusory estimates are insufficient to plausibly plead that the Defendants would not have qualified under the Alternative Size Standard.

### c.  The Seikels Fail to Sufficiently Plead That the Purportedly False Claims Were Made with the Requisite Scienter.

Even if the Henderson Defendants made false statements in their PPP applications, which the Henderson Defendants deny, the amended complaint should nonetheless be dismissed because the Seikels fail to sufficiently allege that such statements were made with the requisite scienter. Under the FCA, "knowing" means "that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C.

---

[6] The Alternative Size Standard was created in a September 29, 2010 notice explaining that the Small Business Jobs Act of 2010 required the SBA to create an alternative size standard for small business classifications because the "small business concern" test was too restrictive. *See* Small Business Administration, *Small Business Jobs Act: New Alternative Size Standard for 7(a) and 504 Loans*, SBA.GOV (Sept. 29, 2010), https://www.sba.gov/document/information-notice-5000-1175-small-business-jobs-act-new-alternative-size-standard-7a-and-504-loans. The SBA has not updated the alternative size standard, and the two-prong test in the 2010 notice remains the same two-prong test listed in Question 2 of the PPP FAQs.

§ 3729(b)(1)(A).

At the outset, it is important to note that the Seikels' claims regarding the Henderson Defendants' business practices and organization, *see* ECF No. 93 at 27–28, are not allegations of knowledge of alleged fraudulent activity; rather, they are merely allegations pertaining to business practices and organization. As they often do, the Seikels erroneously rely on extensive inferences and all-encompassing "totality of the circumstances"-style arguments even where specific allegations of proof are required.

Further, the Seikels' reliance on the recent decision of the Supreme Court in *United States ex rel. Schutte v. Supervalu Inc.*, Nos. 21-1326 and 22-111, 2023 WL 3742577 (U.S. June 1, 2023), overreaches its relevance and misconstrues the Henderson Defendants' argument. The Henderson Defendants do not dispute that *Supervalu* clearly provides that "[t]he FCA's scienter element refers to [defendants'] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* at *6. However, this misses the point of the Henderson Defendants' argument:  For "claims based on a false representation of compliance with an applicable federal statute, regulation, or contractual term—'a defendant cannot act "knowingly" if it bases its actions on an objectively reasonable interpretation of the relevant statute . . . when it has not been warned away from that interpretation by authoritative guidance.'" *United States ex rel. Ross v. Independent Health Corp.*, 12-CV-299S, 2023 WL 24055, at *6 (W.D.N.Y. Jan. 3, 2023) (citations omitted). *Supervalu* makes clear that a defendant situated like the Henderson Defendants can have subjectively believed that its actions were objectively reasonable under the applicable statute or regulation. Thus, because the Seikels have failed to allege any "authoritative guidance" that warned away from the Henderson Defendants' reading of the relevant guidelines, the Seikels have failed to sufficiently plead that the Henderson Defendants acted with the requisite

scienter.

### d. The Seikels Fail to Sufficiently Plead That the Purportedly False Claims Were Material.

Finally, even if the Henderson Defendants made false statements in their PPP applications, which the Henderson Defendants deny, the amended complaint should be dismissed because the Seikels fail to sufficiently allege that the falsity of such statements was material. The Fourth Circuit has held that a relator must allege "both materiality *and* a 'false statement or fraudulent course of conduct' as distinct elements of an FCA claim." *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir. 2014) (citation omitted) (emphasis in original). The Seikels fail to allege that the purported falsity of any statement within the PPP applications was material to the government's decision to issue PPP funding. *See* ECF No. 80 ¶¶ 211–26. In their response, the Seikels point to several allegations which they contend demonstrate the materiality of the allegedly false statement of the Henderson Defendants, *see* ECF No. 93 at 24–25; however, the Seikels' attempts to further amend their deficient amended complaint through their response brief cannot cure the amended complaint, and the Seikels have still failed to identify which allegations in the amended complaint show that any alleged misrepresentations by the Henderson Defendants were "capable of influencing" the government's decision to issue payment.

### 3. The Court Should Not Grant Leave for the Seikels to Further Amend the Amended Complaint.

The Court should decline the Seikels' request for further leave to amend their amended complaint. The Seikels failed to amend their original complaint, filed on October 22, 2020, until after the Henderson Defendants and Alvarez Defendants moved to dismiss the complaint on February 28, 2023, despite the facts purportedly uncovered by the Seikels' investigation and the ongoing investigation by the Department of Justice. The amended complaint, however, still fails to cure the deficiencies identified by the Defendants and should be dismissed for the same reasons.

11

To permit the Seikels to amend their amended complaint again, over two years after it was originally filed and after failing to cure the deficiencies identified in the Defendants' earlier motions to dismiss, would be unjust.

## III. CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC respectfully request the Court to grant their motion and enter an order dismissing the amended complaint against them with prejudice.

STEPTOE & JOHNSON PLLC
OF COUNSEL

/s/   Shawn A. Morgan
Allison B. Williams (WV ID # 11329)
Shawn A. Morgan (WV ID # 6640)
Quentin T. Collie (WV ID # 13830)
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000
allison.williams@steptoe-johnson.com
shawn.morgan@steptoe-johnson.com
quentin.collie@steptoe-johnson.com

*Counsel for Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of June 2023, a true and correct copy of the foregoing "Reply in Support of Henderson Defendants' Motion to Dismiss Amended Complaint" was electronically filed and served through the Court's CM/ECF system on counsel of record listed as:

| | |
|---|---|
| BARON & BUDD, P.C.<br>OF COUNSEL | William G. Powers<br>Andrew M. Miller<br>The Watergate, 10th Floor<br>600 New Hampshire Avenue, NW<br>Washington, DC 20037 |
| POWELL & MAJESTRO, PLLC | Anthony J. Majestro<br>405 Capitol St., Suite P-1200<br>Charleston, WV 25301 |
| STINSON, LLP<br>OF COUNSEL | Marc R. Weintraub<br>100 South Ashley Drive, Suite 500<br>Tampa, FL 33602 |
| BAILEY & GLASSER, LLP<br>OF COUNSEL | Alexandra Langley Serber<br>Patricia M. Kipnis<br>209 Capitol St.<br>Charleston, WV 25301 |
| U.S. DEPT. OF JUSTICE | Christopher James Prezioso<br>Maximillian F. Nogay<br>U.S. Attorney's Office - Whg<br>PO Box 591<br>Wheeling, WV 26003<br><br>Elizabeth L. Coyne<br>U.S. Attorney's Office<br>615 Chestnut St, Suite 1250<br>Philadelphia, PA 19106 |

|  |  |
|---|---|
| STEPTOE & JOHNSON PLLC<br>OF COUNSEL | */s/     Shawn A. Morgan*<br>Shawn A. Morgan (WV ID # 6640)<br>400 White Oaks Boulevard<br>Bridgeport, WV 26330<br>(304) 933-8000<br>shawn.morgan@steptoe-johnson.com<br><br>*Counsel for Defendants Jason P. Henderson, Energy Resource Group, LLC, and ET360, LLC* |

16897098