# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. JOSEPH SEIKEL and TERENCE SEIKEL,**<br><br>        **Plaintiffs-Relators,**<br><br>   v.<br><br>**DAVID B. ALVAREZ; APPLIED CONSTRUCTION SOLUTIONS, INC.; ENERGY TRANSPORTATION, LLC; ENERGY RESOURCE GROUP, LLC; ET360, LLC; BEAR CONTRACTING, LLC; BEAR UTILITIES, LLC; JASON P. HENDERSON; and JOHN DOES NOS. 1-50, FICTITIOUS NAMES,**<br><br>        **Defendants.** | Case No.: 1:23-cv-00001-TSK |

## RELATORS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL

## **TABLE OF CONTENTS**

*INTRODUCTION*.................................................................................................................... *1*

*ARGUMENT*............................................................................................................................ *2*

I.     Relators' RFPs Are Relevant to the Core Issue In This Case: Whether the Defendants Are Affiliated.................................................. 2

II.     Defendants Inappropriately Seek to Limit Discovery to Their Theory of the Case. ............................................................................. 6

       a.     **Defendants Inappropriately Seek to Limit Discovery Solely to Documents Produced to The United States.** ........................................ 8

III.    Defendants Are Improperly Withholding Documents Based on Unsupported and Already-Rejected Objections.................................. 9

       a.     **Defendants' Objections Do Not Insulate Them from All Discovery**................................................................................ 9

       b.     **Defendants Continue to Rely on Non-Specific and Unsupported Objections**.................................................................. 12

       c.     **Despite the Court's Repeated Rejections, Defendants Continue to Rely on the Pending Motions to Dismiss as a Basis to Refuse to Produce Discovery.** ........................................................................ 15

*CONCLUSION*........................................................................................................................ *15*

*CERTIFICATE OF SERVICE* ............................................................................................... *17*

# INTRODUCTION

The Court should strike the Alvarez[1] and Henderson[2] Defendants' (collectively, "Defendants'") objections and compel the Defendants to respond in full to Relators' requests for production ("RFPs").

Defendants have taken the position that they alone can determine the scope of the relevant production, which unsurprisingly include only those documents which they believe support their ill-conceived defense involving the alternative size standard. Put simply, Defendants would like Relators to review only the documents they think support one of their own defenses. This approach is not only antithetical to the rules of civil discovery, but it conveniently ignores the fundamental allegation in this lawsuit, *i.e.*, that the Defendant entities were affiliated and, taken collectively, exceeded the 500-employee count required to qualify for PPP loans. Defendants cannot simply wish away the central factual issue in the case.

Defendants make much about the breadth of Relators requests, including the time periods. But at the same time, Defendants have stated that they will not produce any additional documents beyond the limited subset of documents already produced. Taking Defendants' position to its logical conclusion, even if Relators were to limit their requests to a two-year time period, Defendants have already confirmed they will produce no additional documents. Tellingly, Defendants have not provided any compromise position on time periods or on a production of any additional documents besides the ones they believe support their defense.

Effectively, Defendants position can be summarized as "Relators are only entitled to documents related to an irrelevant defense we have asserted, but Relators are not entitled to documents they believe to be relevant to that or any other issue." There simply is no authority that

---

[1] Defendants David Alvarez, Energy Transportation, LLC, and Applied Construction Solutions, Inc.
[2] Jason Henderson, ET360, LLC, and Energy Resource Group, LLC.

allows Defendants to dictate the discovery process. The Court should order Defendants to produce documents responsive to Relators' RFPs.

## ARGUMENT

To date, the Alvarez Defendants have not produced a single document in response to 29 of Relators' 37 RFPs. The Henderson Defendants' lack of production is even more severe. Specifically, Defendants ERG and ET360 produced a limited number of documents to just 3 of Relators' 37 RFPs, while Defendant Jason Henderson has not produced a *single* document in response to *any* of Relators' RFPs. The Court should strike the Defendants' objections and compel the Defendants to respond in full to Relators' RFPs.[3]

**I. RELATORS' RFPS ARE RELEVANT TO THE CORE ISSUE IN THIS CASE: WHETHER THE DEFENDANTS ARE AFFILIATED.**

The fundamental allegation in this lawsuit is that the various Defendant entities are not separate entities each independently eligible for PPP loans set aside for small businesses but rather, affiliated entities that, taken collectively, exceeded the 500-employee count to qualify for PPP loans. Thus, whether the entities are affiliated is the central factual issue in the case.

Yet, whether entities qualify as small businesses under SBA regulations is a fact intense inquiry. *See United States v. Medeiros*, 647 F. Supp. 3d 1130, 1165–66 (D.N.M. 2022) (whether a

---

[3] The Henderson Defendants failed to timely respond to Relators' motion to compel. Defendants' oppositions were due on Monday, December 4, *i.e.*, 14 days from the service of the motion to compel, ECF 142. L.R. Civ. P. 7.02(b)(1)). But the Henderson Defendants failed to file until yesterday. ECF 148 ("Henderson Defs. Br."). Relators emailed Henderson Defendants to inquire as to the basis of the late filing but, as of the filing of this reply, have not received a response. Courts in this circuit have found that a party's failure to timely oppose a motion amounts to a waiver. *See, e.g., Prince v. Clarke*, No. 2:17CV7, 2018 WL 2033700, at *6 (E.D. Va. Mar. 21, 2018) (a party's failure to respond to a motion "waives the right to contest the arguments made therein" (citing *Westry v. N. C. AT & T State Univ.*, 286 F. Supp. 2d 597, 600 (M.D.N.C. 2003), *aff'd*, 94 F. App'x 184 (4th Cir. 2004))), *report and recommendation adopted*, No. 2:17CV7, 2018 WL 2023126 (E.D. Va. May 1, 2018). The Court should enter an order granting the Motion to Compel as to the Henderson Defendants on the untimeliness of their response alone. Regardless, even if the Court considers the arguments put forth by the Henderson Defendants, those arguments fail for the same reasons as the Alvarez Defendants' arguments.

company qualifies as a service-disabled veteran owned small business under SBA regulations is "is a fact-intensive inquiry based on the totality of the circumstances."). Entities are affiliated under SBA regulations when "when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." 13 C.F.R. § 121.103(a)(1). To determine whether affiliation exists between entities, "SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships." *Id.* § 121.103(a)(2). "SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation." *Id.* § 121.103(a)(5). Thus, the Relators' discovery requests, in large part, are aimed at the voluminous and varied information related to the affiliation between the various Defendants.

Parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *e.g.*, *Mezu v. Morgan State Univ.*, 495 F. App'x 286, 290 (4th Cir. 2012); *Brode v. Mon Health Care, Inc.*, No. 1:20-CV-253, 2021 WL 7448631, at *3 (N.D. W. Va. May 3, 2021). "Relevance is not, on its own, a high bar," *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), and, as a result, information "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1). Information sought is relevant if it "bears on, or … reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Courts have consistently held this Rule provides for extremely liberal treatment of what may be obtained in discovery." *CSX Transp., Inc. v. Robert V. Gilkison*, No. CIV.A. 5:05-CV-202, 2009 WL 1528190, at *5 (N.D. W. Va. May 29, 2009) (citing *Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)).

The RFPs request specific categories of documents directly related to allegations in the First Amended Complaint concerning the affiliation between the various Defendant entities:[4]

| RFP Nos. | Category of Documents and Information Requested | Allegations in Complaint |
|---|---|---|
| 1-2 | Documents regarding PPP loans, including communications with the Government (RFP 1) and third parties (RFP 2) | The Defendants conspired among themselves and with other entities, providing false statements and records to the Government, in order to apply for and receive PPP loans (See FAC ¶¶ 14, 199) |
| 3-4, 7 | All PPP loan applications (RFP 3) and PPP loan forgiveness applications (RFP 4) | Because they are affiliated, Defendants made false certifications in each their PPP loan applications and PPP loan forgiveness applications that they were separate small businesses (FAC ¶¶ 5, 81, 85, 89, 94, 98, 102 178, and 208) |
| 5-6 | Efforts to determine eligibility of PPP Loans before (RFP 5) and after (RFP 6) submitting applications | There were multiples resources available to the to the Defendants confirm their eligibility before and after submitting their PPP loan applications, which Defendants could have consulted. (See FAC ¶ 64-5) |
| 8, 17-24 | Financial information such as tax returns (RFP 8), financial statements and schedules to determine net worth (RFP 17-20), debt/financing agreements (RFP 21), accounting transactional level journal reports (RFP 22), accounting information (RFP 23), and bank account reconciliations (RFP 24) | Defendants did not strictly maintain and/or pay expenses owed between the affiliated entities (FAC ¶ 120)<br><br>Expense/cost schedules show Alvarez's control over the affiliated Defendants. (FAC ¶ 171)<br><br>Defendants do not satisfy the alternative test net worth and net income requirement. (FAC ¶ 176 "the Affiliated Defendants had approximately $30 million in assets and a workforce of nearly 800 employees with approximately $75 million in annual payroll costs in March 2020, the Affiliated Defendants had a maximum tangible net worth well exceeding $15 million. Thus, even if the alternative size test applies (which it does not), the Affiliated Defendants would not qualify.") |

---

[4] RFP Nos. 27-37 request documents and information pertaining to this litigation and are therefore relevant to Relators' allegations in this matter. *See, e.g.*, ECF 142-1 at 62 (RFP No. 27, which requests documents relating to "this litigation and the Federal Government's investigation into the Defendants."); *id.* at 69 (RFP No. 30, which requests documents "referenced in [Defendants'] Initial Disclosures"); *id.* at 76 (RFP No. 34, which requests documents that Defendants "obtain pursuant to any subpoena You issue in this case.").

4

| RFP Nos. | Category of Documents and Information Requested | Allegations in Complaint |
|---|---|---|
| 9-14 | Documents related to the operation of the businesses, such as corporate governance documents (RFP 9), organizational structure (RFP 10), master service agreements (RFP 11), contracts with vendors (RFP 12), insurance policies (RFP 13), and marketing (RFP 14). | Defendant Alvarez represents himself as the owner of the Affiliated Defendants and manages them, hiring or firing employees, directing them to share resources and personnel and on how to draft Master Service Agreements ("MSAs") (FAC ¶¶ 112, 115, 117, 118, 120, 128)<br><br>The Affiliated Defendants share office space, equipment, trucks, information technology, human resources, business development, marketing, billing, and invoicing services (FAC ¶ 142-61)<br><br>ERG was only able to secure a MSA because of its affiliation with the other Defendants (FAC ¶ 140)<br><br>The Affiliated Defendants shared their health insurance plans for their employees, even though each company was purportedly a separate business entity (FAC ¶ 148)<br><br>The Affiliated Defendants market their various services as one, interconnected company (FAC ¶¶ 127-41) |
| 15-16 | Sales, management, asset, debt and/or financing agreements, agreements; subcontracting agreements; equipment purchase or rental agreements, and lease or sublease agreements among the Defendants (RFP 15) and between third parties (RFP 16) | Defendant Alvarez is listed as the owner on credit applications and owns the building where the Affiliated Business are located (FAC ¶¶ 110, 142)<br><br>The Affiliated defendants would subcontract with each other and would have liens filed on each other's behalf (FAC ¶¶ 114, 123) |
| 25 | Closure of ET360 | The decision to close ET360 and related discussions occurred around the same time the Defendants were applying for PPP Loan applications (FAC ¶ 167-69) |
| 26 | The preparation of MVB Financial Corp.'s Form FR Y-6, "Annual Report of Holding Companies" | *See* FAC ¶ 64 "Defendant Alvarez is the Interim Chairman of MVB Financial Corp.—a publicly-traded bank that issued a minimum of 124 loans under the PPP. Alvarez also serves on MVB's bank loan approval committee." |

As shown in the table above, Relators' RFPs are related to the allegations in this case and seek relevant information.

5

## II. DEFENDANTS INAPPROPRIATELY SEEK TO LIMIT DISCOVERY TO THEIR THEORY OF THE CASE.

The Defendants largely ignore Relators' substantial allegations concerning affiliation. Instead, Defendants seek to remake this case into one solely about the alternative size standard.[5] The Alvarez Defendants justify their limited production to date by claiming that those documents "go to the very heart of this case as they plainly demonstrate that the Alvarez Defendants are insulated by the 'alternative size test.'" Alvarez Defs. Br. at 1; *see also id.* at 6, 14. Similarly, the Henderson Defendants assert that their current production "encompasses the documents needed for the Henderson Defendants to confirm the merits of the Henderson Defendants' PPP loan applications and, particularly, the applicability of the 'alternative size standard.'" Henderson Defs. Br. at 2. But this justification for limited production fails for two reasons.

First, Defendants are not permitted to unilaterally restrict discovery to their defenses. "[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory." 8 Charles A. Wright et al., Fed. Prac. & Proc. § 2011 (3d ed. 2011); *see also Huseby, LLC v. Bailey*, No. 3:20-cv-167 (JBA) (TOF), 2021 WL 3206776, at *7 (D. Conn. July 29, 2021) ("[A] party may not typically object to relevant discovery on the ground that it believes its opponent's case to be meritless."); *Admiral Ins. v. Versailles Med. Spa, LLC*, No. 3:20-cv-568 (JCH) (TOF), 2021 WL 106273, at *3 (D. Conn. Jan. 12, 2021) ("[I]t is well established that discovery ordinarily should not be denied because it relates to a claim or defense that is being challenged as insufficient.") (citation and quotation marks omitted)).

The alternative size test does not apply in this case. As Relators argued in their opposition to the motions to dismiss, the alternative size standard is inapplicable to the Defendants' PPP

---

[5] Tellingly, however, the Henderson Defendants describe the Relators' claims in terms of affiliation: "the Defendants were not entitled to these [PPP] loans because … the Defendants were actually affiliated entities." Henderson Defs. Br. at 4.

applications because those applications were submitted *before* the SBA issued guidance on the alternative size standard. *See* ECF 93 at 19-21. In any event, as Relators further allege, Defendants have taken more money than permitted under the CARES Act. *See* ECF 80 ¶ 5; CARES Act, § 1102(a)(2)(E)(ii) (alleging that the Defendants received more than $3 million over the $10,000,000 PPP loan limit). Thus, even if there were indisputable factual evidence that Defendants satisfied that test—which there certainly is not—the alternative size standard would not be dispositive of Relators' claims because the Defendants would still have exceeded the maximum loan amount. ECF 93 at 22 n.7.

Furthermore, that Defendants believe they may have a possible defense does not mean that Plaintiffs are precluded from getting discovery on their allegations in the case. Courts have "repeatedly rejected attempts to define the bounds of appropriate discovery by challenging the merits of existing claims or defenses in briefing discovery motions." *Big City Dynasty v. FP Holdings*, L.P., 336 F.R.D. 507, 511 (D. Nev. 2020) (collecting cases); *see, e.g.*, *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-cv-54 (GLS) (CFH), 2015 WL 773752, at *3 (N.D.N.Y. Feb. 24, 2015) ("No party possess[es] the unilateral ability to dictate the scope of discovery based on their own views of the parties' respective theories of the case." (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)) (quotation marks omitted). As one court in this circuit has aptly put it: "That Defendants disagree with Plaintiffs' theory is to be expected, but that disagreement does not absolve them of their basic responsibilities under the federal discovery rules." *Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*, No. CIV.A. DKC 09-0100, 2011 WL 6000562, at *2 (D. Md. Nov. 29, 2011). Thus, Defendants cannot pick and choose what claims and defenses for which to produce discovery. But that is exactly what the Defendants have done here by only producing documents related to their preferred defense.

Second, even if discovery could be limited to the alternative size test alone, Defendants cannot further restrict the discovery to only those documents which they believe are relevant to the test. The alternate size test is wholly dependent on the factual issues of the net worth and net income of the Defendants. But the Alvarez Defendants claim that documents related to the Defendants finances have "absolutely no bearing to the PPP or the Alvarez Defendants' PPP applications." Alvarez Defs. Br. at 4. Just two sentences later, however, the Alvarez Defendants concede that at least "some subset of these documents may be germane." *Id.* Nevertheless, they have refused to produce any of those documents to Relators. According to Defendants, the limited production of documents to date should be adequate for Relators to evaluate the alternative size standard. *See id.* at 14; Henderson Defs. Br. at 2. Relators disagree. The RFPs propounded by Relators are designed to uncover documents and information relevant to the analysis of Defendants' purported defense. *See* ECF 142-1 (RFP Nos. 8, 17-21, 23).

    a.    **Defendants Inappropriately Seek to Limit Discovery Solely to Documents Produced to The United States.**

The Defendants have argued strenuously, both in meet and confers and in their oppositions, that discovery should be limited to the subset of documents produced to the United States. Henderson Defs. Br. at 3, 5; Alvarez Defs. Br. at 2. This position is premised on the idea that the government's investigation and subsequent declination to intervene speaks to the merits of the Relator's allegations (and, therefore, discovery on those allegations). But Courts have roundly rejected that proposition. *See, e.g.*, *United States v. Medtronic PLC*, No. 217CV01903ODWSSX, 2022 WL 541604, at *3 (C.D. Cal. Feb. 23, 2022) (noting that "the government's decision not to intervene has no relevance" to whether the relator has stated a claim); *U.S. ex rel. Chumba v. Emcompass Health Corp.*, No. 20-2513-DDC-RES, 2023 WL 2734231, at *6 (D. Kan. Mar. 31, 2023) (refusing to "attribute any significance to the government's decision not to intervene in a

8

FCA lawsuit"); *United States v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2021 WL 4168140, at *1 (D. Kan. Sept. 14, 2021) ("The government's decision not to intervene in an FCA lawsuit means one simple thing: the government declined to intervene.").

There is good reason for courts to reject the argument peddled by Defendants here. After all, "the plain language of the [FCA] clearly anticipates that even after the Attorney General has 'diligently' investigated a violation under 31 U.S.C.A. § 3729, the Government will not necessarily pursue all meritorious claims." *U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1458 (4th Cir. 1997). The Fourth Circuit has explained that the government's decision not to intervene is simply not relevant in an FCA action brought by a private party." *U.S. ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 457 (4th Cir. 2011). If the government's decision not to intervene were a sufficient basis for defendants to withhold discovery, then "there [would be] little purpose to the qui tam provision permitting private attorneys general," *Berge*, 104 F.3d at 1458. What documents the Government may or may not have collected as part of its investigation has no bearing on Relators' right to discovery of documents pertaining to their theory of the case and allegations in the Amended Complaint.

### III. DEFENDANTS ARE IMPROPERLY WITHHOLDING DOCUMENTS BASED ON UNSUPPORTED AND ALREADY-REJECTED OBJECTIONS.

#### a. Defendants' Objections Do Not Insulate Them from All Discovery.

Defendants' general objections to the RFPs as overbroad and not relevant are not well taken. Even if parts of Relators' requests were overbroad or not relevant—points that Relators contest—that does not excuse the Defendants from producing *any* additional documents. In fact, Federal Rule of Civil Procedure 26 is exceedingly clear on this point: "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are

9

being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). For example, if the Defendants believe that a 2-year time frame is appropriate, they should have produced the documents for that time period. Yet, Defendants have made it clear they do not intend to produce *any* additional documents.

To excuse the lack of proper responses, the Alvarez Defendants bemoan that Relators offered no guidance as to what documents and information Relators are seeking. Alvarez Defs. Br. at 9. The information and documents sought are clearly laid out in the RFP requests. To be clear, the Alvarez Defendants' responses to 29 of Relators' 37 RFPs do not indicate that *any documents* are being produced in response to that particular RFP. *See generally* ECF 142-1. ERG and ET360 produced a limited number of documents to just 3 of Relators' 37 RFPs. *See generally* ECF 142-3 (RFP Nos. 3, 4, and 27); ECF 142-4 (same). Defendant Jason Henderson has not produced a *single* document in response to *any* of Relators' RFPs. *See generally* ECF 142-2. For those requests, the Alvarez Defendants hardly need suggestions for what is missing: the production of any documents at all in response to most RFPs.

Defendants also attempt to somehow blame the Relators for the impasse here by repeatedly suggesting, in varying phrasing, that Relators have not reviewed what documents have been produced. Alvarez Defs. Br. at 11; Henderson Defs. Br. at 3-4. As an initial matter, their accusations are simply incorrect. Relators' counsel has reviewed every single page of the Defendants' document production.[6]

Nevertheless, it is plain from even a cursory review that the production to date does not come close to responding to the Relators RFPs. In fact, the Alvarez Defendants' own amended

---

[6] Whether Relators' *analysis* of the documents produced to date is complete has no bearing on whether the Defendants have properly withheld all other documents that are responsive to Relators' RFPs. This analysis necessarily remains ongoing, particularly considering additional documents and information the Defendants are obligated to produce.

10

RFP responses bear this out: only 8 of 37 RFPs (RFP Nos. 1-4, 7, 27, 28, 30) were amended to include the documents produced as responsive. The Henderson Defendants' lack of production is even more severe. ERG and ET360 produced a limited number of documents to just 3 of Relators' 37 RFPs. ECF 142-3 (RFP Nos. 3, 4, and 27); ECF 142-4 (same). Defendant Jason Henderson has not produced a *single* document in response to *any* of Relators' RFPs. ECF 142-2. The written RFP responses alone evidence that Defendants productions are deeply deficient.

The Alvarez Defendants also complain that Relators have not addressed the Alvarez Defendants' objections "head on." Alvarez Defs. Br. at 3, 11. Relators *did* address Defendants objections head-on (and address them more specifically again below), including their objections based on the pending motions to dismiss, ECF 142 at 15-16, their objections based on producing confidential or sensitive information, *id.* at 16-17, their objections to overbreadth and relevance (among other boilerplate objections), *id.* at 18-20, and their privilege objections, *id.* at 20-21. Apparently, this is not enough for the Alvarez Defendants. But that's the thing about boilerplate objections: they render futile the exercise of identifying to what extent the objections might have, or lack, merit.[7] "Indeed, when Defendant references a general objection without providing analysis on how that general objection specifically applies to the individual interrogatory, then the Court is left with no guidance in resolving the discovery dispute and the purpose of discovery is frustrated." *Patrick v. PHH Mortg. Corp.*, 298 F.R.D. 333, 337 (N.D. W. Va. 2014).[8]

---

[7] The Alvarez Defendants argue that Relators' "excessive reliance on adverbs demonstrates a grudging acceptance that the Alvarez Defendants individually responded to each of their requests." Alvarez Defs. Br. at 9-10. Relators' use of adverbs represents nothing more than the fact that, in a limited number of responses, the Alvarez Defendants chose to word their boilerplate objections slightly differently. *See, e.g.*, ECF 142 at 7 n.3.

[8] The lack of specific objections is especially improper in this case because the universe of documents Defendants are willing to produce is not tailored to the Relators' RFP requests. Rather, the production is restricted solely to documents previously provided to a different party pursuant to different requests. Such a restriction is unsupported by any authority, much less the general objections Defendants put forth.

11

The Alvarez Defendants' argument regarding their privilege objections further supports the inappropriateness of their RFP responses. Despite objecting to privilege in every request, Alvarez Defendants now claim that they have no privileged documents to produce. If defendants can assert objections in RFP responses, then subsequently say in response to a motion to compel that those objections have no applicability, it renders the written objection process meaningless.

**b.      Defendants Continue to Rely on Non-Specific and Unsupported Objections.**

The Alvarez Defendants attempt to justify their refusal to produce documents by pointing to what they claim are two "universal" defects: the requests seek information from an "overbroad timeframe" and seek "protected, proprietary information." But, as pointed out in the Motion to Compel, the Alvarez Defendants' objections fail because they are not sufficiently specific as to what is overbroad and because the allegedly propriety information is directly at issue in this case and protected via a protective order.

The Alvarez Defendants' objection to the definition of "Relevant Time Period" in Relators' RFPs lacks the required specificity under Rule 26. The Alvarez Defendants refer to this objection as "painstakingly detailed." Alvarez Defs. Br. at 2. A cursory review of the objection betrays this characterization. Of the five pages the Alvarez Defendants spend on this objection, nearly four of those pages are an excerpt from a case which explains various legal standards. ECF 142-1 at 9-12. But cutting and pasting case law into an RFP response does little, if anything, to explain the basis for the objection to the specific RFP at issue. The next paragraph objects that the definition "includes time periods that are not relevant," but offers no detail as to what portion of the time period the Defendants deem irrelevant. *Id.* In five pages, the greatest degree of detail offered in support of the objection is that the time period extends to 9 years before the PPP was established and to 2 years after the PPP was terminated. *Id.* at 9. Despite spending numerous pages on the objection, the response says remarkably little about the basis for the objection to the time period.

12

The refusal to produce any documents at all in response to most RFPs suggests that Defendants view the entire time period as overbroad. But that is nonsensical, and the Defendants implicitly acknowledge that at least some of the time period is relevant and proportional to the needs of the case. *See* Alvarez Defs. Br. at 12 (discussing how the alternative size standard considers the prior two fiscal years). Of course, as explained above, Relators' allegations go far beyond whether the Defendants met the alternative size standard, or whether that standard is even applicable. The allegations regarding the affiliation under SBA rules are not limited to a two-year look back and many affiliation cases look at facts related to affiliation across many years to determine the totality of the circumstances. *See, e.g.*, *U.S. ex rel. Fox Unlimited Enters., LLP v. TriMark USA, LLC, et al.*, No. 1:19-cv-914 (N.D.N.Y.); *U.S. ex rel. Ameliorate Partners, LLP v. ADS Tactical, Inc., et al.*, No. 1:13-cv-01880 (D.D.C.). Despite their admission that at least some time period is relevant, Defendants refuse to produce any additional documents.[9]

Another reason offered by Defendants for continuing to refuse to produce documents is that some of those documents contain sensitive and confidential commercial information. Alvarez Defs. Br. at 2, 4-5, 6; Henderson Defs. Br. at 3, 5-7. Defendants' argument that Relators must establish a "substantial need" for this information is fatally flawed for three reasons.

First, the "substantial need" standard does not apply. The standard for party discovery is relevance. *See supra* at 3; Fed. R. Civ. P. 26(b)(1); *see also Aroeste v. United States*, 655 F. Supp. 3d 1053, 1061 (S.D. Cal. 2023) ("discovery must merely be relevant to an asserted claim." (quoting

---

[9] Here again, the Alvarez Defendants misstate the Relators' position regarding the appropriate time frame. They assert that Relators "have unwaveringly chosen to stand on their definition of 'relevant time period,'" Alvarez Defs. Br. at 2. Not so. In meet and confers, Relators have expressed a willingness to narrow the disputes where possible. Defendants have not responded with particularized objections explaining what portion of the time period they believe is disproportionate. Nor have Defendants indicated a willingness to produce even a subset of documents. Instead, Defendants have continued to offer a blanket assertion that the requests are not relevant, and that Defendants believe they have produced everything Relators should need to dismiss the case.

Fed. R. Civ. P. 26(b)(1))). And it is the party *resisting* discovery who has the burden of stating, and justifying, its objections to the production of documents and information. ECF 142 at 13-14; *see, e.g.*, *U.S. Dep't of Lab. v. Randolph Cnty. Sheltered Workshop, Inc.*, No. 2:16-CV-78, 2017 WL 10442120, at *1 (N.D. W. Va. Nov. 17, 2017).

The "substantial need" standard governs the production of commercially sensitive information of non-parties sought under Fed. R. Civ. P. 45. The RFPs at issue have been propounded pursuant to rules governing production from parties, Fed. R. Civ. P. 26 and Fed. R. Civ. P. 34. Those rules for party discovery do not contain the "substantial need" language.

Second, the parties have agreed to, and the Court has already entered, a protective order providing for production of documents at varying levels of confidentiality, including an attorney's eyes-only designation, specifically to address Defendants' concerns about proprietary and sensitive commercial information. ECF 120 at 3-4. So, whether the information is confidential business information has no bearing on whether such information is discoverable. ECF 142 at 16-17; *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2011 WL 2671230, at *3 (N.D. W. Va. July 7, 2011) (noting that "information is not shielded from discovery on the sole basis that the information is confidential"); *Susko v. City of Weirton*, No. 5:09-CV-1, 2011 WL 98557 at *5 (N.D. W. Va. Jan. 12, 2011) (same). This is so even when subpoenas are issued to non-parties under rule 45; "[c]ourts frequently deny motions to quash [subpoenas] seeking confidential information or overrule objections based on confidentiality where there is a protective order in place that will prevent the misuse of the information." *VeroBlue Farms USA, Inc. v. Wulf*, No. 22-MC-00105-JWB-GEB, 2022 WL 2817612, at *5 (D. Kan. July 19, 2022); *see, e.g.*, *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, No. 19-00257, 2019 WL 250429, at *3-*4 (D. Ariz.

14

Jan. 17, 2019) (denying motion to quash where subpoena recipient did not show why a protective order was not sufficient to address its confidentiality concerns).

Finally, the core allegations in this case about affiliation require disclosure of information regarding the internal operations of the Defendant companies. Additionally, it is *Defendants* who have put their financial state squarely at issue by arguing that the alternative size standard is an applicable defense. Relators are entitled to seek discovery to test the veracity of the Defendants position and not limited to only those documents Defendants would choose to do so.

>    **c.    Despite the Court's Repeated Rejections, Defendants Continue to Rely on the Pending Motions to Dismiss as a Basis to Refuse to Produce Discovery.**

Despite their perfunctory assertion that they have not disregarded any of the Court's orders, Alvarez Defs. Br. at 15, the Alvarez Defendants continue to argue that the pending motions to dismiss are a reason to withhold discovery. Neither the Alvarez Defendants nor the Henderson Defendants have limited their objections based on the pending motions to dismiss to meet and confers, but rather have continued to assert these objections in their responses to Relators' RFPs. *See* ECF 142 at 5. This includes responses served on Relators *after* the Court denied the Henderson Defendants' motion to stay on that very basis. *See* ECF 142 at 2-3. The Defendants' flat refusal to produce any additional documents, premised on the objection that the motions to dismiss remain pending, is directly contrary to the Court's denial of the motion to stay.

## CONCLUSION

For the foregoing reasons, and for the reasons explained in Relators' motion, ECF 142, the Court should enter an order striking the objections lodged by the Defendants and compelling the Defendants to respond in full to Relators' requests for production.

/s/ *Anthony J. Majestro*
Anthony J. Majestro, Esq. (WVSB #5165)
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

William G. Powers (*pro hac vice*)
Andrew M. Miller (*pro hac vice*)
Baron & Budd, P.C.
The Watergate
600 New Hampshire Ave., NW, 10th Floor
Washington, DC  20037
Telephone:  202.333.4562
Facsimile:  202.337.1039
wpowers@baronbudd.com
amiller@baronbudd.com

*Counsel For Plaintiffs-Relators*

## CERTIFICATE OF SERVICE

I certify that on December 7, 2023, the foregoing Relators' Reply in Support of Their Motion to Compel was filed electronically, that it is available for viewing and downloading from the ECF system, and that all counsel of record will be served by the ECF system.

*/s/ Anthony J. Majestro*
